# IN THE SUPREME COURT OF IOWA

No. 11–1979

Filed June 7, 2013

**SIERRA CLUB IOWA CHAPTER, LINDA BIEDERMAN,**
and **ELWOOD GARLOCK,**

Appellants,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Mitchell E. Turner, Judge.

An organization seeks further review of the district court's dismissal of its petition for judicial review. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Wallace L. Taylor, Cedar Rapids, for appellants.

Thomas J. Miller, Attorney General, and Richard E. Mull, Assistant Attorney General, for appellee.

**WIGGINS, Justice.**

An environmental organization and two of its local members filed a petition for judicial review challenging the Iowa Department of Transportation's (IDOT) decision to locate a highway adjacent to and through two nature preserves. IDOT filed a motion to dismiss, arguing the court should dismiss the case on three bases: (1) the notice of appeal was not timely filed, (2) the organization and its two members failed to exhaust administrative remedies by not seeking a declaratory order under Iowa Code section 17A.9(1)(*a*) (2011) before petitioning for judicial review, and (3) the petition is not ripe for adjudication. On the timeliness issue, we affirm the court of appeals decision and find the notice of appeal was timely because the organization and its members filed a proper posttrial motion, triggering the tolling exception. Regarding the second issue, we affirm the court of appeals decision due to our conclusion, based on the rules of statutory construction, that when a declaratory order is potentially available, a party must seek a declaratory order under Iowa Code section 17A.9(1)(*a*) before bringing a lawsuit, claiming that future events will result in a violation of a statute within an agency's primary jurisdiction. Finally, we vacate that part of the court of appeals decision regarding ripeness because we hold the matter ripe for adjudication. Accordingly, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

**A. Facts.** Because we are reviewing a motion to dismiss, we accept the following facts in the petition as true. *See McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010) ("We accept as true the facts alleged in the petition . . . .").

The Sierra Club is a nonprofit organization dedicated to preserving and enhancing the natural environment. There are over five thousand

individuals who are members of the Iowa chapter of the Sierra Club and who reside in the state.

The members involved in the Iowa chapter hike in the Rock Island State Preserve and the Rock Island County Preserve in Linn County. The members also take photographs and study the flora and fauna in that area. Both preserves include a rare specimen of native Iowa sand prairie. Moreover, the nature areas provide a habitat for native species of plants and animals, some of which are endangered or threatened.

The IDOT is a state administrative agency, as defined by Iowa Code section 17A.2(1). IDOT has proposed extending Highway 100 west of Cedar Rapids. The extension would run adjacent to the Rock Island State Preserve and through the Rock Island County Preserve. The Highway 100 project would adversely impact the ecosystem, in addition to the Sierra Club members' use and enjoyment of the nature preserves.

We will discuss other relevant facts below, as needed.

**B. Prior Proceedings.** The Sierra Club, along with two members of the Iowa chapter who reside in Linn County, filed a petition captioned, "Petition for Judicial Review," under Iowa Code section 17A.19 on June 8, 2011.[1] The petition alleges that IDOT has not complied with two environmental statutes found in Iowa Code sections 314.23(3) and 314.24 by locating the Highway 100 extension adjacent to the Rock Island State Preserve and through the Rock Island County Preserve. The Sierra Club, in its petition, asks the court to determine whether IDOT complied with these statutes. Accordingly, the Sierra Club seeks the following relief from the court: (1) a permanent injunction prohibiting

---

[1]For purposes of clarity, the opinion refers to all petitioners collectively as the Sierra Club.

IDOT from taking further action to acquire property, let bids, or contract or carry out any construction work to implement the Highway 100 project; (2) an order requiring IDOT to comply with sections 314.23(3) and 314.24 regarding the protection of natural areas; (3) an award to the Sierra Club for fees and expenses, pursuant to Iowa Code section 625.29; and (4) an order for such other and further relief as the court deems just and equitable. The Sierra Club does not raise the constitutionality of IDOT's actions.

IDOT responded to the petition with a motion to dismiss, which the Sierra Club resisted. On October 17, the district court granted IDOT's motion to dismiss. The district court granted the motion because the Sierra Club had not exhausted administrative remedies by first seeking a declaratory order from IDOT under section 17A.9(1)(*a*). The Sierra Club has maintained throughout the proceedings that it exhausted all administrative remedies before petitioning for judicial review. However, the Sierra Club did not participate in any administrative proceedings with IDOT prior to filing the petition for judicial review.

Thereafter, on November 4, the Sierra Club filed a motion to enlarge and expand the findings of the district court and modify the district court's ruling, pursuant to Iowa Rule of Civil Procedure 1.904(2). IDOT resisted. The district court denied the motion on November 22.

The Sierra Club filed its notice of appeal on December 5. This occurred forty-nine days after the district court's dismissal of the petition for judicial review, but only thirteen days after the decision on the rule 1.904(2) motion. The court of appeals held (1) the Sierra Club's rule 1.904(2) motion tolled the time for appeal; (2) the Sierra Club must seek a declaratory order from IDOT, pursuant to Iowa Code section

17A.9(1)(*a*), before petitioning for judicial review; and (3) the case is not ripe for review.

The Sierra Club sought further review, which we granted.

## II. Issues.

This matter requires us to resolve three issues. The first asks us to determine whether a posttrial motion under rule 1.904(2), which a party uses to expand the district court's decision and preserve error, tolls the time for filing a notice of appeal beyond the statutorily prescribed thirty-day period. Second, we must decide if a party challenging agency action must seek a declaratory order from the agency under section 17A.9(1)(*a*) before petitioning for judicial review in order to satisfy the exhaustion doctrine. The final issue requires us to determine whether a particular claim presented for judicial review is ripe for adjudication.

## III. Standard of Review.

We review the district court's grant of a motion to dismiss a petition for correction of errors at law. Iowa R. App. P. 6.907; *see also Rucker v. Taylor*, 828 N.W.2d 595, 598 (Iowa 2013). Dismissal of the petition is only appropriate if, when viewing the petition in the light most favorable to the plaintiff, " 'the plaintiff's claim could not be sustained under any state of facts provable under the petition.' " *Griffen v. State*, 767 N.W.2d 633, 634 (Iowa 2009) (quoting *Sanford v. Manternach*, 601 N.W.2d 360, 363 (Iowa 1999)). The parties agree our review is for correction of errors at law.

## IV. Timeliness of the Notice of Appeal.

Generally, a party must file a notice of appeal within thirty days of the final order or judgment. Iowa R. App. P. 6.101(1)(*b*). However, when a party timely files a proper posttrial motion, such as a rule 1.904(2) motion, the thirty-day period tolls until the court enters a ruling on that

motion. *Id.*; *see also In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

The district court filed its judgment granting the motion to dismiss the petition on October 17, 2011. The Sierra Club filed its notice of appeal on December 5—forty-nine days after the judgment. Thus, under the general rule, the notice was untimely. *Rudolph v. Iowa Methodist Med. Ctr.*, 293 N.W.2d 550, 554 (Iowa 1980) (recognizing the court lacks jurisdiction when a notice of appeal is late). However, our inquiry does not end here if the tolling exception applies.

For the Sierra Club to receive the benefit of the tolling exception, there are two requirements. First, the movant must file the notice of appeal within thirty days after the court's ruling on a posttrial motion. Iowa R. App. P. 6.101(1)(*b*). Here, after the district court's adverse ruling, the Sierra Club filed a motion to enlarge or expand the district court's findings and ruling pursuant to Iowa Rule of Civil Procedure 1.904(2). The Sierra Club did so on November 4. The district court entered a decision on the rule 1.904(2) motion on November 22. The Sierra Club then filed its notice of appeal just thirteen days after the ruling on the motion. Accordingly, the Sierra Club timely filed the notice of appeal within the thirty-day window after the district court's decision on the rule 1.904(2) motion. This satisfies the first requirement for the tolling exception.

Second, the tolling exception only applies if the posttrial motion was filed for the proper reason. *State v. Olsen*, 794 N.W.2d 285, 288–89 (Iowa 2011). Rule 1.904(2) permits an aggrieved party to file a motion requesting enlargement or expansion of the court's findings or conclusions. Iowa R. Civ. P. 1.904(2). This procedural device "is primarily designed for the party faced with an adverse judgment, not for

the party defending the judgment." *In re Marriage of Okland*, 699 N.W.2d at 267.

> There are various uses for a rule 1.904(2) motion:
>
> The rule can be used by a party, with an appeal in mind, as a tool for preservation of error. Similarly, it can be used to better enable a party to attack 'specific adverse findings or rulings in the event of an appeal' by requesting additional findings and conclusions. Additionally, it can be used, with no appeal in mind, to obtain a ruling on an issue that the court may have overlooked in making its judgment or decree.

*Id.* at 266 (internal citations omitted). Thus, when the district court fails to make specific findings, a rule 1.904(2) motion is an appropriate mechanism to preserve error. *Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012). Moreover, if the movant asks the court to examine facts it suspects the court overlooked and requests an expansion of the judgment in view of that evidence, then the motion is proper. *City of Waterloo v. Black Hawk Mut. Ins. Ass'n*, 608 N.W.2d 442, 444 (Iowa 2000).

When using a rule 1.904(2) motion to preserve error, it is proper for the motion to address "purely legal issue[s]" presented to the district court prior to its ruling but not decided by it. *Lamasters*, 821 N.W.2d at 863, 864 n.2 ("[If] the district court *failed to make sufficiently specific findings and conclusions*, then the [party] must file a rule 1.904(2) motion to preserve [the error]."); *accord Meier v. Senecaut*, 641 N.W.2d 532, 538–39 (Iowa 2002). Nevertheless, a rule 1.904(2) motion is improper where the motion only seeks additional review of "a question of law with *no* underlying issue of fact." *In re Marriage of Okland*, 699 N.W.2d at 265 n.2 (emphasis added). Additionally, if the posttrial motion amounts " 'to no more than a rehash of legal issues raised and decided adversely' " to the movant, the motion is not appropriate. *Explore Info. Servs. v. Iowa*

*Ct. Info. Sys.*, 636 N.W.2d 50, 57 (Iowa 2001) (quoting *Bellach v. IMT Ins. Co.*, 573 N.W.2d 903, 905 (Iowa 1998)). Thus, a rule 1.904(2) motion is not proper if it is used merely to obtain reconsideration of the district court's decision.

IDOT argues the court of appeals incorrectly found the Sierra Club's rule 1.904(2) motion was proper. The court of appeals decided the Sierra Club properly used the motion to challenge several factual findings of the district court and to preserve error. We agree with this conclusion.

The Sierra Club filed its rule 1.904(2) motion to preserve error regarding the district court's decision to dismiss the petition. Therein, the Sierra Club challenges the summary decisions of the district court, which involve legal issues with underlying questions of fact. For instance, the district court summarily concluded section 17A.9(1)(*a*) applies, requiring the Sierra Club to obtain a declaratory order before seeking judicial review. The district court did not provide an explanation as to why this provision demands such action.

In an attempt to add clarity, the district court indicated "[s]ection 17A.9 does *not* apply only to hypothetical issues," but then quotes three cases decided by this court wherein we stated "section 17A.9 contemplates rulings on *purely hypothetical sets of facts*, not on concrete challenges such as that here presented."[2] (Emphasis added.) The district court provided no rationale to resolve the apparent discrepancy

---

[2]*See Bennett v. Iowa Dep't of Natural Res.*, 573 N.W.2d 25, 26 (Iowa 1997); *Tindal v. Norman*, 427 N.W.2d 871, 873 (Iowa 1988); *City of Des Moines v. Pub. Emp't Relations Bd.*, 275 N.W.2d 753, 758 (Iowa 1979). The statement in *Tindal*, however, is obiter dictum. *See O.M.J.C. Signal, Inc. v. Iowa Dep't of Transp.*, No. 11–1116, 2012 WL 1431520, at *4 (Iowa Ct. App. Apr. 25, 2012) (finding the agency lacked the authority to issue a declaratory order because the petitioner was challenging the facial constitutionality of a statute, a topic which is beyond the agency's authority to decide).

between its decision and the jurisprudence of our court. Moreover, the district court did not definitively specify whether it found this case to involve hypothetical or concrete facts. Because there is a question of fact as to whether this case implicates hypothetical or concrete facts, as well as a question of law regarding whether the Sierra Club must seek a declaratory order before judicial review, the rule 1.904(2) motion was proper. *In re Marriage of Okland*, 699 N.W.2d at 265 n.2 (recognizing a rule 1.904(2) motion is appropriate when there is a question of law with an underlying issue of fact).

The rule 1.904(2) motion also highlights a legal issue not addressed by the district court: the appropriate standard of review. The Sierra Club points out that the motion to dismiss must be viewed in the light most favorable to the plaintiff. This inherently requires our consideration of underlying questions of fact, which the district court overlooked by failing to set forth the appropriate standard of review. The Sierra Club used the rule 1.904(2) motion to preserve error on this issue.

Viewing the petition in the light most favorable to the Sierra Club, we find the Sierra Club's rule 1.904(2) motion is both timely and proper. Therefore, we affirm the court of appeals by finding the notice of appeal was timely.

## V. Requirement of Exhaustion of Administrative Remedies.

Generally, a party must exhaust all administrative remedies before seeking judicial review. Iowa Code § 17A.19(1). The statute governing judicial review expressly provides: "A person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review thereof . . . ." *Id.* The provisions in chapter 17A.19 are "the exclusive means" by which a party may seek judicial review. *Teleconnect Co. v. Iowa State*

*Commerce Comm'n*, 366 N.W.2d 515, 518 (Iowa 1985). There are certain situations when the litigant can bypass the exhaustion doctrine and obtain a judicial decision; however, the Sierra Club has not preserved error on an argument for one of these exceptions to apply. *See, e.g., Riley v. Boxa*, 542 N.W.2d 519, 521 (Iowa 1996) (recognizing the exhaustion requirement is exempted when an administrative remedy would be inadequate or fruitless).

The first step in our analysis is to determine what the Sierra Club actually filed. It is of no consequence the Sierra Club captioned its petition as a "Petition for Judicial Review." The name a party gives "a pleading is not of vital importance." *Schulte v. Mauer*, 219 N.W.2d 496, 502 (Iowa 1974) (citation and internal quotation marks omitted). Instead, we determine the character of a pleading by its allegations and legal effect. *Id.*

The Sierra Club is asking the court to find IDOT failed to comply with sections 314.23(3) and 314.24 and subsequently enjoin IDOT from proceeding until it complies with these Code sections. In the appendix, the parties have included a complaint filed in federal court. The complaint involves the same plaintiffs, with the defendants being the United States Secretary of Transportation and the Administrator of the Federal Highway Administration. In the complaint, the Sierra Club alleges the secretary and administrator did not follow the applicable federal statutes and regulations when they issued and approved the Final Supplemental Impact Statement for the Highway 100 project. The Sierra Club requested declaratory and injunctive relief. The Sierra Club captioned the complaint as a "Complaint for Declaratory and Injunctive Relief." This shows that although the Sierra Club has filed two pleadings with different names, the allegations and legal effect of those allegations

control the character of the pleading. On our review of the petition filed in this case, we find the document captioned as "Petition for Judicial Review" is in fact a request for declaratory and injunctive relief.

The next issue before the court is whether the Sierra Club failed to exhaust administrative remedies by not seeking a declaratory order under section 17A.9(1)(*a*) prior to petitioning for judicial review. The district court construed section 17A.9(1)(*a*) as a mandatory provision, requiring an individual to obtain a declaratory order before seeking judicial review. Because the Sierra Club is seeking declaratory relief, our analysis involves construing section 17A.9 to determine whether declaratory orders are mandatory or permissive.

**A.    Legislative History.** Section 17A.9, as originally enacted, finds its genesis in the Model State Administrative Procedure Act. When adopted in 1974, section 17A.9 provided:

> Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision, rule or other written statement of law or policy, decision, or order of the agency. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases.

1974 Iowa Acts ch. 1090, § 9 (codified at Iowa Code § 17A.9 (1975)). This statute is consistent with the 1961 Uniform Law Commissioners' Model State Administrative Procedure Act. *See* Model State Admin. Procedure Act § 8 (1961), 15 U.L.A. 267 (2000). The 1974 enactment required any agency with authority to issue declaratory rulings to do so within thirty days after a party files the petition. Iowa Code § 17A.19(1) (1975). Failure of the agency to do so results in the administrative remedy being "deemed inadequate or exhausted." *Id.*

In 1981, the commissioners amended the model act, including the section regarding declaratory orders.  Model State Admin. Procedure Act § 2-103 (amended 1981), 15 U.L.A. 26 (2000).  Iowa adopted the amendment regarding declaratory orders in 1998.  *See* 1998 Iowa Acts ch. 1202, § 13.  With the exception of a nonsubstantive amendment, which eliminated unnumbered paragraphs, section 17A.9 as amended in 1998 was in effect at the time the Sierra Club filed its petition in the district court.  *See* 2008 Iowa Acts ch. 1032, § 201(2).  Section 17A.9 now provides:

> 1. *a.* Any person may petition an agency for a declaratory order as to the applicability to specified circumstances of a statute, rule, or order within the primary jurisdiction of the agency.
>
> *b.* (1) An agency shall issue a declaratory order in response to a petition for that order unless the agency determines that issuance of the order under the circumstances would be contrary to a rule adopted in accordance with subsection 2.
>
> (2) However, an agency shall not issue a declaratory order that would substantially prejudice the rights of a person who would be a necessary party and who does not consent in writing to the determination of the matter by a declaratory order proceeding.
>
> 2. Each agency shall adopt rules that provide for the form, contents, and filing of petitions for declaratory orders, the procedural rights of persons in relation to the petitions, and the disposition of the petitions.  The rules must describe the classes of circumstances in which the agency will not issue a declaratory order and must be consistent with the public interest and with the general policy of this chapter to facilitate and encourage agency issuance of reliable advice.
>
> 3. Within fifteen days after receipt of a petition for a declaratory order, an agency shall give notice of the petition to all persons to whom notice is required by any provision of law and may give notice to any other persons.
>
> 4. Persons who qualify under any applicable provision of law as an intervenor and who file timely petitions for intervention according to agency rules may intervene in

proceedings for declaratory orders. The provisions of sections 17A.10 through 17A.18 apply to agency proceedings for declaratory orders only to the extent an agency so provides by rule or order.

5. Within thirty days after receipt of a petition for a declaratory order, an agency, in writing, shall do one of the following:

*a.* Issue an order declaring the applicability of the statute, rule, or order in question to the specified circumstances.

*b.* Set the matter for specified proceedings.

*c.* Agree to issue a declaratory order by a specified time.

*d.* Decline to issue a declaratory order, stating the reasons for its action.

6. A copy of all orders issued in response to a petition for a declaratory order must be mailed promptly to the petitioner and any other parties.

7. A declaratory order has the same status and binding effect as any final order issued in a contested case proceeding. A declaratory order must contain the names of all parties to the proceeding on which it is based, the particular facts on which it is based, and the reasons for its conclusion.

8. If an agency has not issued a declaratory order within sixty days after receipt of a petition therefor, or such later time as agreed by the parties, the petition is deemed to have been denied. Once a petition for a declaratory order is deemed denied or if the agency declines to issue a declaratory order pursuant to subsection 5, paragraph "d", a party to that proceeding may either seek judicial review or await further agency action with respect to its petition for a declaratory order.

Iowa Code § 17A.9 (2011).

It is also important to note that the legislature retained the Code language specifying that failure of the agency to issue a declaratory order deemed the administrative remedy inadequate or exhausted. *Id.* § 17A.19(1); *see also id.* § 17A.9(8).

**B. Analysis.** The court's goal when construing a statute is to determine legislative intent. *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 39 (Iowa 2012). If the statute's language is plain and unambiguous, we will look no further. *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 730 (Iowa 2008). A statute's meaning is ambiguous if reasonable persons can disagree on its meaning. *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006).

A reasonable person can argue the requirement to file a petition for declaratory relief with the agency is permissive because the word "may," as found in section 17.9(1)(*a*), is unambiguous. Indeed, the Iowa Code contains the rules of statutory construction, which specifically state: "The word '*shall*' imposes a duty. . . . The word '*must*' states a requirement. . . . The word '*may*' confers a power." Iowa Code § 4.1(30)(*a*)–(*c*). Furthermore, we have found that although it may have a mandatory meaning in some circumstances, the legislature's use of the word "may" usually indicates legislative intent for the statute to apply permissively. *Iowa Nat'l Indus. Loan Co. v. Iowa State Dep't of Revenue*, 224 N.W.2d 437, 440 (Iowa 1974). Thus, a person can make a credible argument that a party need not exhaust administrative remedies before filing a declaratory judgment action with the court.

On the other hand, we have said that when a statute provides a person with an administrative remedy and uses the word "may," but does not explicitly state the administrative remedy is the exclusive remedy, the person is still required to exhaust the administrative remedy before seeking court intervention. *Riley*, 542 N.W.2d at 522. Thus, a reasonable person can also make a credible argument that a party must file a declaratory order with the agency before seeking court intervention,

because the Code uses the word "may." Therefore, we find the statute is ambiguous.

When construing an ambiguous statute, we are required to assess the statute in its entirety, not just isolated words or phrases. *State v. Young*, 686 N.W.2d 182, 184–85 (Iowa 2004). Our construction must be reasonable so that it best achieves the statute's purpose. *Harden v. State*, 434 N.W.2d 881, 884 (Iowa 1989).

Adhering to these established principles, we conclude the legislature's intent when enacting section 17A.9(1)(*a*) in its present form requires the Sierra Club to first petition IDOT and therein ask the agency to determine whether IDOT complied with sections 314.23(3) and 314.24 in extending Highway 100 adjacent to the Rock Island State Preserve and through the Rock Island County Preserve. We do so for a number of reasons.

First, analysis of chapter 17A reveals the legislature emphasized that if an agency declines to issue a declaratory order after receiving a petition for declaratory relief, any administrative remedy available to the person seeking the order "shall be deemed inadequate or exhausted." Iowa Code § 17A.19(1). By use of the term of art, "inadequate or exhausted," the legislature indicated that if available, a party must first exhaust his or her administrative remedies before seeking court intervention. This construction is consistent with principles of statutory construction and the spirit of the Iowa Administrative Procedure Act. *Id.* § 17A.1(3)–(4).

Second, when the legislature first enacted section 17A.9 in 1974, it stated:

> Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the

applicability of any statutory provision, rule or other written statement of law or policy, decision, or order of the agency.

1974 Iowa Acts ch. 1090, § 9. Shortly after the legislature enacted section 17A.9, Professor Arthur Bonfield wrote a law review article examining Iowa's Administrative Procedure Act. In addition to being a recognized administrative law scholar, Professor Bonfield was counsel to the Subcommittee on an Administrative Procedures Act of the Standing Committees on State Government for the Iowa General Assembly from 1973 to 1974—the period when the legislature enacted section 17A.9. Arthur Earl Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, the Rulemaking Process*, 60 Iowa L. Rev. 731, 731 (1975).

In his article, Professor Bonfield commented on the declaratory ruling provisions of section 17A.9. He stated:

> While a declaratory judgment proceeding in a court is a possible method of clarifying ambiguous laws, a declaratory ruling issued by an agency is a more desirable method of achieving clarity. In the first place, the cost of obtaining such a judicial declaration far exceeds the financial resources of most individuals. Moreover, the process by which one obtains such a judgment is time consuming, very complicated, and often uncertain. The uncertainty is a result of the many limitations with which the judicial process has cloaked itself. Among these limitations is a reluctance, even on the state level, to answer suppositive questions whose resolution is unnecessary to resolve a demonstrably active contest of rights between parties. That is, there is a natural reluctance to determine rights in a judicial proceeding on the basis of facts which may be no more than hypothetical because the person seeking such a determination may only want to know them for planning purposes. There is also a general reluctance on the part of the courts to issue a declaratory decree regarding the applicability of law enforced by an agency without first giving the agency an opportunity to utilize its expertness in determining the appropriate result. Declaratory relief also may be unavailable absent a showing of substantial need. What is required, therefore, is a relatively cheap, simple, expeditious and widely available substitute.

Such an alternative is the agency-issued declaratory ruling. In most instances where it is available this device provides members of the public with a means by which they may obtain the practical benefits of a declaratory judgment without encountering its many drawbacks. Administrative rulings are far less expensive to obtain than the judicial analogue. The procedures surrounding their issuance are also reasonably simple and expeditious. And since the administrative process is not as circumscribed as the judicial process by the sort of limitations noted earlier, a declaratory ruling by an agency may be less fraught with uncertainty, easier to secure, and more widely available than a declaratory judgment. Of course, to the extent an agency ruling runs counter to the interests of the applicant, and the applicant finds it worthwhile to seek its modification by higher authority, the judicial process may need to be invoked.

*Id.* at 805–06 (footnotes omitted). Professor Bonfield goes on to say:

Besides providing for the judicial reviewability of declaratory rulings, section 19(1) makes it clear that individuals seeking judicial review of administrative action must first seek a declaratory ruling from the agency *if such a ruling would be an adequate means of relief.* The Act provides that this administrative remedy shall be deemed exhausted or inadequate *if otherwise appropriate* only if the agency refused to act upon such a petition within 30 days or if the agency declines to rule upon its merits.

*Id.* at 824. This language reveals the legislature created the administrative procedure for agency-issued declaratory orders, as codified in section 17A.9, to replace the court-provided remedy of declaratory judgments under Iowa Rule of Civil Procedure 1.1102 for matters within an agency's jurisdiction.

Moreover, after the legislature amended section 17A.9 in 1998, the taskforce drafting the recommendations that eventually became the 1998 amendments issued a report. Arthur Earl Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 1–8 (1998) [hereinafter Bonfield]. The report contained the taskforce's comments on section 17A.9 as follows:

This section creates and establishes all of the requirements for a special proceeding to be known as a "declaratory order" proceeding. It provides an inexpensive and generally available means for persons to obtain reliable information about agency administered law as it applies to their particular circumstances.

This section repeals the declaratory order provision contained in current IAPA section 17A.9. Iowa law has not previously required that an agency issue a ruling, and has not contemplated indispensable parties in the declaratory order proceeding. Under this proposed provision, however, an agency is *required* to issue a declaratory order unless (i) such an order is contrary to a rule properly adopted by the agency in accordance with subsection (2), or (ii) such an order substantially prejudices the rights of any person who would be an indispensable party to the proceeding and who has not consented in writing to a determination of the matter by a declaratory order. . . .

. . . .

Subsection (7) assures that declaratory rulings are (i) judicially reviewable, (ii) binding on the petitioner, the agency, and other parties to the declaratory proceeding, unless reversed or modified on judicial review, and (iii) have the same precedential effect as contested cases. A declaratory order only determines the legal rights of the particular parties to the proceeding in which it was issued. The requirement in subsection (7) that each declaratory order contain the facts on which it is based and the reasons for its conclusion, will facilitate judicial review of the order's legality and also assures a clear record of what occurred for the parties and other persons interested in the order because of its possible precedential effect.

Proposed subsection (8) is based on current IAPA section 17A.19(1), but is superior in several respects. First, if an agency refuses to issue a declaratory order by virtue of either exception allowed for in subsection (1), a question arises as to when a party may seek judicial review of that refusal. Uncertainty is eliminated by stipulating that, if an agency has not issued a declaratory order within sixty days, the petition for the order is deemed denied.

*Id.* at 36–37, 39–40 (citations omitted).

These comments reinforce the concept that the legislature intended section 17A.9 to be the preferred method for obtaining a declaratory order when a person challenges the agency's administration of a statute.

We reach this conclusion based upon the legislature's articulation in the statute of the requirements for a declaratory order proceeding and the mandate that all agencies issue a declaratory order.

Third, in a declaratory order proceeding, the agency must state in its order the facts it relied upon and the basis for its decision. Iowa Code § 17A.9(7). This provision ensures the agency will make a complete record and the parties will know the rationale supporting the agency's decision.

Fourth, although the Sierra Club argues it would be futile to ask the agency to reverse its own prior decision, we do not agree with this position. For more than thirty-five years, agencies in this state have decided many issues within their purview. We have no evidence to suggest agencies will conduct declaratory order proceedings in a biased, unprofessional manner and without regard for the rules promulgated by the legislature. As one court aptly noted, "[c]ourts should not lightly assume the futility of a party's pursuing an administrative remedy; instead, it is to be assumed that the administrative process, if given the opportunity, will discover and correct its errors." *Pa. Pharmacists Ass'n v. Commonwealth*, 733 A.2d 666, 673 (Pa. 1999).

Finally, any party to a declaratory order may seek judicial review of that order. Iowa Code § 17A.19. Such relief protects a party to a declaratory order proceeding if the agency makes the incorrect decision. Moreover, our Code allows the court to take further evidence, as the court deems appropriate, when reviewing an agency's decision in a declaratory order proceeding. *See id.* § 17A.19(7). This assures the parties that all the evidence necessary to decide the issues will be before the court.

Accordingly, we find the Sierra Club must first seek a declaratory order under Iowa Code section 17A.9(1)(*a*) before asking the court for relief; and thus, the exhaustion doctrine bars its petition.

## VI. Ripeness for Adjudication.

Although the ripeness doctrine is usually implicated in a court proceeding, it appears section 17A.9 allows an agency to decline to hear a petition for declaratory order because the case is not ripe. *See* Bonfield at 37–38 (commenting on section 17A.9(2) and stating that "[w]ithin these limits, therefore, an agency may include in its rules reasonable standing, ripeness, and other requirements for obtaining a declaratory order"). For this reason, we address the ripeness issue.

The Iowa Rules of Civil Procedure provide:

> Any person interested in an oral or written contract, or a will, or whose rights, status or other legal relations are affected by any statute, municipal ordinance, rule, regulation, contract or franchise, may have any question of the construction or validity thereof or arising thereunder determined, and obtain a declaration of rights, status or legal relations thereunder.

Iowa R. Civ. P. 1.1102. This rule allows a party to seek a declaratory judgment. We have acknowledged that the application of this rule is "[o]ne of the most troublesome questions in this field of law is, when does a justiciable controversy arise, as distinguished from a mere abstract question?" *Wesselink v. State Dep't of Health*, 248 Iowa 639, 643, 80 N.W.2d 484, 486 (1957).

The Sierra Club asserts the matter is ripe for judicial review, pointing to the facts showing the Highway 100 project is on IDOT's five-year project plan, funds have been committed for the acquisition of a right-of-way, and funds have been committed for mitigation of wetlands at the site. IDOT rebuts the suggestion that the claim is ripe by arguing

the Highway 100 project is still only a proposal and plagued by a number of contingencies.

"The difference between a mere abstract question and a controversy has been called one of degree which is difficult to define precisely." *Katz Inv. Co. v. Lynch*, 242 Iowa 640, 648, 47 N.W.2d 800, 805 (1951). Before a court can adjudicate a claim, there must be " 'a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.' " *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 474 (Iowa 2004) (quoting *Katz Inv. Co.*, 242 Iowa at 648, 47 N.W.2d at 805). We have applied a two-factor inquiry for ripeness: (1) are the relevant issues sufficiently focused to permit judicial resolution without further factual development and (2) would the parties suffer any hardship by postponing judicial action? *Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418, 432 (Iowa 1996) (citing United States Supreme Court precedent to analyze the ripeness of a constitutional takings claim for § 1983 civil rights purposes); *see also Gospel Assembly Church v. Iowa Dep't of Revenue*, 368 N.W.2d 158, 160 (Iowa 1985) (" 'The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S. Ct. 1507, 1515, 18 L. Ed. 2d 681, 691 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S. Ct. 980, 984, 51 L. Ed. 2d 192, 199 (1977))).

One of our most recent cases implicating ripeness involved a suit brought against a city by a nonprofit citizens group objecting to a public improvement project that included a recreational lake and a public park. *Citizens for Responsible Choices*, 686 N.W.2d at 472. There, the city had

to issue bonds and establish a water recreational area before proceeding with the project. *Id.* at 474–75. Before the city could issue the bonds, the Code required the city to hold a public hearing. *Id.* at 474. At the time of the suit, the public hearing had not taken place nor had the city established the recreational area. *Id.* at 474–75. Under these facts, we held the action failed for ripeness. *Id.* at 475.

Here, we have a different situation. The decision where to locate a highway rests solely within the discretion of IDOT. *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 760 (Iowa 1998). According to the record before us, IDOT has made the decision to locate the Highway 100 extension adjacent to and through two nature preserves. There are no other decisions to make concerning the highway's location. Although the actual building of the highway may be contingent on future funding, IDOT has committed funds in excess of 4.3 million dollars in the 2012–2014 funding plan to obtain the right-of-way and for wetland mitigation at the chosen location. This commitment of funds supports the fact that IDOT has selected the site for the highway. Thus, there are no other facts that need to be resolved for the court to determine whether IDOT complied with sections 314.23(3) and 314.24 when it decided to locate the Highway 100 extension.

As for whether the Sierra Club would suffer any hardship by postponing judicial action, we answer this question in the affirmative. By choosing the location, acquiring the right-of-way, and engaging in wetland mitigation, the Highway 100 project is imminent. Thus, we find the Sierra Club will suffer hardship by postponing judicial action, because IDOT is actively obtaining the right-of-way necessary for locating the Highway 100 extension adjacent to and through two nature preserves.

Accordingly, we find this matter ripe for adjudication.

**VII. Disposition and Summary.**

On the timeliness issue, we affirm the court of appeals decision and find the notice of appeal was timely because Sierra Club filed an appropriate posttrial motion triggering the tolling exception. Regarding the second issue, we affirm the court of appeals decision due to our conclusion, based on the rules of statutory construction, that when a declaratory order is potentially available, a party must seek a declaratory order under Iowa Code section 17A.9(1)(*a*) before bringing a lawsuit, claiming that future events will result in a violation of a statute within an agency's primary jurisdiction. Finally, we vacate that part of the court of appeals decision finding the matter is not ripe for adjudication. Accordingly, we affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**