# IN THE COURT OF APPEALS OF IOWA

No. 13-1979
Filed August 27, 2014

**KAREN BURKHART,**
    Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF HUMAN SERVICES,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Karen Romano, Judge.

A grandparent appeals the agency denial of her application to adopt her granddaughter. **AFFIRMED.**

Karen Burkhart, Wellman, appellant pro se.

Thomas J. Miller, Attorney General, and Diane M. Stahle, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

M.S. is four years old and living with a foster family. She is in foster care because the juvenile court terminated the parental rights of her mother and father in August 2011. The child lived with her paternal grandparents, Karen and Marshall Burkhart, from June 2010 until January 2012, when she was removed by the Iowa Department of Human Services (DHS) based on concerns about the safety of the Burkharts' home. Despite the removal, the DHS considered the Burkharts' application to adopt M.S. An adoption home study concluded the Burkharts could not provide a safe and stable home for M.S. That conclusion was affirmed by an administrative law judge (ALJ), the DHS director, and the district court on judicial review.

The adoption denial is now before our court on appeal. Our review of the merits of the appeal is derailed by two procedural problems. First, because the Iowa Supreme Court dismissed Marshall's appeal, leaving the DHS decision final as to him, Karen is no longer eligible to adopt under Iowa Code section 600.4 (2013). Second, her appeal is not timely. Finally, even if we were to reach the substantive claim, we would find the agency's decision supported by substantial evidence and affirm.

**I.      Legal principles and procedural background**

Iowa Code section 600.8 requires single adults or married couples who wish to adopt a child to undergo a preplacement investigation to determine if their home is suitable for a child. This investigation, commonly called a home study, also explores how the emotional maturity, finances, health, relationships and

other relevant characteristics of the prospective parents will impact their ability to accept and care for the child and provide for the child's needs. The study also checks the prospective parents' criminal records and for any history of founded child abuse.

The Burkharts were required to apply for adoption with DHS because M.S. was under the agency's guardianship. Iowa Admin. Code r. 441-200.3. When a child is under the guardianship of the DHS, the preference is for placing a child "in a stable home environment as expeditiously as possible." Iowa Code § 600.7A.

An adoptive home study is also required under the DHS rules. Iowa Admin. Code r. 441-200.4(1). The DHS may rely on the outcome of the home study to approve or deny the prospective family as a placement for the child. *Id.* Iowa KidsNet, a contractor of the DHS, performed the home study for the Burkharts. A KidsNet consultant observed the Burkharts in three parenting classes and visited their home four times between March 6, 2012 and May 7, 2012. The consultant noted Karen and Marshall both had criminal records and a contentious relationship with local law enforcement.

The consultant also gathered detailed information about the family, including the Burkharts' two adult sons, both of whom have mental health challenges and criminal histories. The older son, who was twenty-eight at that time, is M.S.'s biological father. The Burkharts talk to him every day by telephone. The younger son, who was twenty-one, lived with Marshall and Karen. During one of the consultant's home visits, Marshall and the younger son

had a fist fight. Marshall said his son threatened to kill him and Marshall contemplated calling the police. An adoption worker and the family, safety, risk, and permanency (FSRP) provider both expressed concerns that Karen minimized the troubling behavior of her sons and did not appreciate the threat those behaviors posed to M.S.

At the close of a thirty-two page report, the consultant recommended against the Burkharts' adoption application. The DHS accepted the KidsNet recommendation.

In June 2012, the DHS notified the Burkharts that their application to adopt had been denied. The reasons for the denial focused on the family's troubled history and the Burkharts' ongoing struggle to hold their adult sons accountable for behaviors that could endanger M.S.:

> Your application has been denied for the following reasons: Concerns regarding the family's inability to take accountability for actions due to their past upbringing and/or disabilities, lack of insight/understanding of children's need for independence, Karen's tendency to minimize/cover for her sons in times of adversity even when posing a safety risk to young child, Karen and Marshall's history with law enforcement has created a lack of trust and risk of harm if something should go unreported, history of continued criminal activity.

The Burkharts, represented by counsel, sought an administrative hearing. On October 3, 2012, the ALJ held an in-person hearing, featuring testimony from social workers and adoption specialists, as well as Karen Burkhart.

The ALJ issued his proposed decision affirming denial of the application on November 30, 2012. The ALJ explained: "If unconditional love were the only factor to consider when granting an adoption, I would approve [the Burkharts']

application to adopt their granddaughter." But he observed "love and familial relationship, standing alone, does not justify adoption in this case or any other." He then pointed to "serious questions" concerning the grandparents' ability to offer M.S. a stable and safe environment. The ALJ chronicled in detail the grandparents' criminal records; the volatile atmosphere in the Burkharts' home, as demonstrated by a recent fight between Marshall and the younger son during a home-study visit; Marshall's mental health issues and his noncompliance with taking prescription medications; the risk that the Burkharts would allow their older son to have contact with M.S., notwithstanding the termination of his parental rights; M.S.'s developmental delays documented during her time in the grandparents' care; the Burkharts' loss of their licenses to drive due to prior criminal activity and their reliance on friends for transportation; and finally their very limited financial means. The DHS director affirmed the ALJ's decision on January 24, 2013.

On February 25, 2013, the Burkharts filed a petition for judicial review of the agency decision. At that juncture, Karen and Marshall began representing themselves, with Karen signing all documents filed with the court. Karen questioned the decision of "the agency, the director and the ALJ"—arguing that they "have deliberately chosen a path which is wholly unjustified. They have elected to disconnect a toddler from a family member who has established a fixed bonded relationship and to make the child an orphan subject to the whims of those who crafted the parting of grandmother and child."

The DHS filed its answer on March 20, 2013, requesting that the court affirm the agency's decision. The Burkharts filed a motion waiving oral argument and asking the district court to rule on the pleadings and record. The matter was submitted to the district court on July 26, 2013.

On September 13, 2013, the district court issued a judicial review order affirming the DHS decision. The court found substantial evidence to support the denial of the Burkharts' adoption application. On October 11, 2013, Karen Burkhart filed a motion for extension of time, citing Iowa Rule of Civil Procedure 1.1004(8) and alleging "errors of law" or "mistakes of fact by the court." The court found good cause to extend time for filing motions because the clerk did not send the judicial review order to the Burkharts (who were exempt from e-filing) until October 21, 2013. The court granted the Burkharts fifteen days from October 21 to file any post-trial motions.

Sixteen days later, on November 6, 2013, Karen Burkhart filed a "Motion to Amend Ruling"—asking the court to "make a separate and distinct ruling on each material issue relied upon." The DHS filed a resistance on November 15, 2013, alleging the Burkharts' motion was "a rehash of legal issues raised and decided adversely" to them, which was "not an appropriate use of the post-trial motion." On November 15, 2013, the district court ruled that "it properly addressed the issues raised on judicial review," and "its ruling fully complies with the requirements of Chapter 17A." The court denied the Burkharts' motion and they filed a notice of appeal on December 12, 2013.

**II. Eligibility to adopt following dismissal of Marshall's appeal**

As a threshold matter, we address Karen's eligibility to adopt under Iowa Code section 600.4. After the parties submitted appellate briefs, the Iowa Supreme Court—on its own motion—issued an order dismissing the appeal of Marshall Burkhart. The order explained Karen's representation of Marshall was an unauthorized practice of law under Iowa Court Rule 37.2 and *Yulin Li ex rel. Lee v. Rizzo*, 801 N.W.2d 351, 359-61 (Iowa Ct. App. 2011) (holding litigants not licensed as attorneys are prohibited from representing another in a legal matter). The order also denied Karen's motion to extend time to file a reply brief. The supreme court then transferred the case to our court.

With Marshall's appeal dismissed, the DHS denial stands as final regarding his application to adopt. This situation leaves Karen as a married person alone seeking to adopt M.S. in these proceedings. Accordingly, Karen no longer fits any of the categories outlined in section 600.4. Under that code provision, the following persons may adopt:

> 1. An unmarried adult.
> 2. Husband and wife together.
> 3. A husband or wife separately if the person to be adopted is not the other spouse and if the adopting spouse:
> > a. Is the stepparent of the person to be adopted;
> > b. Has been separated from the other spouse by reason of the other spouse's abandonment as prescribed in section 597.10; or
> > c. Is unable to petition with the other spouse because of the prolonged and unexplained absence, unavailability, or incapacity of the other spouse, or because of an unreasonable withholding of joinder by the other spouse, as determined by the juvenile court or court under section 600.5, subsection 7.

Iowa Code § 600.4. Without Marshall, Karen is unable to adopt.

### III.     Timeliness of appeal

The court filed its judicial review order on September 13, 2013.  Generally, a party must file a notice of appeal within thirty days of the final order.  Iowa R. App. P. 6.101(1)(b).  When a party files a proper post-trial motion under Iowa Rule of Civil Procedure 1.904(2), the party has thirty days from the court's ruling on that motion to file an appeal.  *Id.*  Because of a clerical error in serving the Burkharts with the judicial review order, the court granted Karen fifteen days from October 21—that is until November 5—to file post-trial motions.  Karen filed her motion to amend on November 6, 2013.  The DHS did not raise a timeliness argument in its resistance to the motion to amend, nor did the district court reject the motion as untimely.

On appeal, the DHS argues the appeal is untimely for two reasons.  First, Karen did not file the motion to amend within the extension granted by the district court.  Second, the motion to amend was not a proper post-trial motion because it did nothing but re-assert settled points and thus did not act to toll the time for appeal.  We find the DHS did not properly preserve the first argument because it was not presented to the district court.  *See DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002) (holding burden of error preservation falls on both parties).  We find the DHS did preserve its second argument—that Karen did not file her post-trial motion for a proper reason.  *See Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 648 (Iowa 2013) (explaining motion may not be "used merely to obtain reconsideration of the district court's decision").

We agree with the DHS that Karen's motion to amend did not point to any legal issue ignored by the district court nor did the motion ask the court to examine facts overlooked in the original ruling. A motion is not proper under rule 1.904(2) if it amounts to "no more than a rehash of legal issues raised and decided adversely to the movant." *Sierra Club*, 832 N.W.2d at 641. Karen's improper motion to amend did not toll the time for appeal.

Karen had thirty days to file her appeal from the date she was served with the judicial review order, which was October 21, 2013. The deadline for filing her notice of appeal was November 20, 2013. She did not file her notice of appeal until December 12, 2013. We conclude her appeal was untimely.

## IV. Merits of Challenge to Agency Decision

Even if Karen was still eligible to adopt and had filed a timely appeal from service of the judicial review order, we would affirm the agency denial of her application.

On appeal, Karen argues the DHS decision was not supported by substantial evidence. In substantial-evidence challenges, our court is extremely limited in its review. We review final agency action for correction of legal errors and are bound by the agency's factual findings if they are supported by substantial evidence. *Sunrise Ret. Cmty. v. Iowa Dep't of Human Servs.*, 833 N.W.2d 216, 219 (Iowa 2013); *see* Iowa Code § 17A.19(10). Our task is not to decide whether the evidence considered by the agency might allow for a different finding, but whether substantial evidence backs up the finding actually made by the agency. *See Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014).

The home study recognized: "There is no doubt that Marshall and Karen love their granddaughter beyond measure." But the home study also reported significant concerns about the Burkharts' emotional maturity and health, their extremely limited finances, their relationship with their adult sons, and their lengthy criminal history. The DHS followed the laws enacted by the state legislature in accepting the recommendations in the home study.

On appeal, Karen accuses the DHS of relying on "a huge bundle of poorly defined and irrelevant elusive concerns." While the Burkharts are entitled to disagree with the agency's factual findings and conclusions drawn from those facts, their disagreement does not mean the evidence weighing against their adoption application was insubstantial.

The goal of our state adoption law is to ensure the permanent placement for a child is safe, stable, and nurturing. For many reasons identified by the home study and the DHS, the Burkharts' household did not meet that goal. The DHS had to develop a safety plan so that Marshall would not be the sole caretaker for M.S. due to his unpredictable behavior. So much tension existed in the household that a fight broke out between Marshall and his son while the KidsNet worker was visiting. And Karen, while advocating for her family, often excuses behavior that could be dangerous for a young child. The family finances are extremely strained. Karen and Marshall do not have reliable means of transportation. During the application process, when family members should be on their best behavior, they had several run-ins with law enforcement. Given all of these negative circumstances, the DHS was justified in concluding placement

with the Burkharts would not be in the best interests of M.S.  The record contains substantial evidence to support the agency's denial of the application to adopt.

**AFFIRMED.**