# IN THE COURT OF APPEALS OF IOWA

No. 19-1197
Filed August 5, 2020

**MIKA COVINGTON, AIDEN VASQUEZ, f/k/a AIDEN DELATHOWER, and ONE IOWA, INC.,**
        Petitioners-Appellants,

**vs.**

**KIM REYNOLDS ex rel. STATE OF IOWA, and IOWA DEPARTMENT OF HUMAN SERVICES,**
        Respondents-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, David M. Porter, Judge.


        The petitioners appeal the district court order dismissing their petition for declaratory judgment and denying their motion for injunctive relief. **AFFIRMED.**


        Rita Bettis Austen and Shefali Aurora of ACLU of Iowa Foundation Inc., Des Moines, and F. Thomas Hecht, Tina B. Solis, and Seth A. Horvath of Nixon Peabody LLP, Chicago, Illinois, and John Knight of ACLU Foundation LGBT & HIV Project, Chicago, Illinois,  for appellants.

        Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General of Iowa, and Thomas J. Ogden, Assistant Attorney General, for appellees.


        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

Mika Covington, Aiden Vasquez, and One Iowa, Inc. brought a declaratory judgment action regarding an amendment to the Iowa Civil Rights Act (ICRA) that exempts transgender Iowans seeking gender-affirming surgical procedures from protection against discrimination by state and local government. The Iowa legislature passed the amendment following our supreme court's decision in *Good v. Iowa Department of Human Services*, 924 N.W.2d 853, 858-59, 862 (Iowa 2019), in which the Iowa Supreme Court held an administrative rule excluding surgeries "for the purpose of sex reassignment" and procedures "related to transsexualism, hermaphroditism, gender identity disorders, and body dysmorphic disorders" from Medicaid coverage violated the ICRA's prohibition against discrimination based on gender identity.[1] As amended, the ICRA states that it "shall not require any state or local government unit or tax-supported district to provide for sex reassignment surgery or any other cosmetic, reconstructive, or plastic surgery procedure related to transsexualism, hermaphroditism, gender identity disorder, or body dysmorphic disorder." *See* 2019 Iowa Acts ch. 85, § 93 (codified at Iowa Code § 216.7(3) (Supp. 2019)). The petitioners alleged the amendment violates provisions of the Iowa Constitution and moved for temporary and permanent injunctions to prevent its enforcement. The district court granted

---

[1] The petitioners in *Good* were two transgender women whose Medicaid providers denied them coverage for gender-affirming surgical procedures. *Good*, 924 N.W.2d at 857-59. Each woman unsuccessfully pursued administrative appeals before petitioning the court for judicial review, arguing the rule violated ICRA and the Equal Protection Clause of the Iowa Constitution. *Id.* at 858-59. Because the supreme court determined the rule violated the ICRA, it did not address the question of whether the rule violated protections afforded by the Iowa Constitution. *Id.* at 863 (following the doctrine of constitutional avoidance).

the State's motion to dismiss the action and denied the petitioners request for injunctive relief on the basis that Covington and Vasquez had adequate remedies at law and their claims were not ripe for adjudication, and One Iowa[2] lacked standing to challenge the legislative amendment.

We review the district court's grant of a motion to dismiss for correction of errors at law. *See Hedlund v. State*, 875 N.W.2d 720, 724 (Iowa 2016). In reviewing the ruling, we accept the petitioners' factual allegations as true. *See id.* Dismissal is appropriate only if the petition, on its face, shows no right of recovery under any state of facts. *See Rieff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001).

**I. Declaratory Judgement.**

The petitioners first challenge the dismissal of their petition for declaratory judgment on ripeness grounds. An action for declaratory judgment is available to any person "whose rights, status or other legal relations are affected by any statute" for the purpose determining its validity. Iowa R. Civ. P. 1.1102. But "[a] constitutional question does not arise merely because it is raised and a decision thereof sought." *Vietnam Veterans Against the War v. Veterans Mem'l Auditorium Comm'n*, 211 N.W.2d 333, 335 (Iowa 1973) (citation omitted). Rather, there must be "a substantial controversy between parties having adverse legal interests of

---

[2] The petition for declaratory judgment describes One Iowa as a nonpartisan, nonprofit organization with the purpose of advancing, empowering, and improving the lives of LGBTQ Iowans statewide. "Its work includes educating Iowans about the LGBTQ community, training healthcare providers, law enforcement, business leaders, and others to ensure LGBTQ Iowans are respected in every facet and stage of their lives, promoting policies within state and local government that protect the civil rights, health, and safety of LGBTQ Iowans, empowering tomorrow's LGBTQ leaders through training and mentorship, and connecting LGBTQ Iowans with vital resources." "One Iowa has a major focus on increasing healthcare access for transgender Iowans."

sufficient immediacy and reality to warrant a declaratory judgment." *Sierra Club Iowa Chapter v. Iowa Dep't of Transp*., 832 N.W.2d 636, 648 (Iowa 2013); *Lewis Consol. Sch. Dist. of Cass Cty. v. Johnston*, 127 N.W.2d 118, 122 (Iowa 1964) ("[N]o one may question the constitutionality of a statute unless he can show that he is injured by it."). The legal interest must be greater than that of the general public. *See Vietnam Veterans*, 211 N.W.2d at 335. And the action must involve a controversy that presently exists rather than "a mere abstract question." *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 474 (Iowa 2004) (citations omitted); *Katz Inv. Co. v. Lynch*, 47 N.W.2d 800, 805 (Iowa 1951) (noting that "courts frequently decline to pass upon remote, future, or contingent rights which may never arise, at least where there is no present need for such determination or, because of absence of parties or otherwise, the determination may not be final"). In making these determinations, we ask: "(1) are the relevant issues sufficiently focused to permit judicial resolution without further factual development and (2) would the parties suffer any hardship by postponing judicial action?" *Sierra Club*, 832 N.W.2d at 649. Typically, both questions must be answered in the affirmative before a case is considered ripe. *See* David Floren, *Pre-Enforcement Ripeness Doctrine: The Fitness of Hardship*, 80 Or. L. Rev. 1107, 1112 (2001).

Our supreme court has illustrated when there is sufficient immediacy for an issue to be ripe for adjudication by contrasting the facts presented in two cases. *See Sierra Club*, 832 N.W.2d at 649. It noted that in *Citizens for Responsible Choices*, it determined that a nonprofit citizens group's objection to a public

improvement project that included a recreational lake and public park was not ripe for adjudication:

> There, the city had to issue bonds and establish a water recreational area before proceeding with the project. Before the city could issue the bonds, the Code required the city to hold a public hearing. At the time of the suit, the public hearing had not taken place nor had the city established the recreational area. Under these facts, we held the action failed for ripeness.

*Sierra Club*, 832 N.W.2d at 649. But the court in *Sierra Club* determined that under the facts before it, a challenge to the Iowa Department of Transportation's decision on a highway's location was ripe for adjudication:

> The decision where to locate a highway rests solely within the discretion of IDOT. According to the record before us, IDOT has made the decision to locate the Highway 100 extension adjacent to and through two nature preserves. There are no other decisions to make concerning the highway's location. Although the actual building of the highway may be contingent on future funding, IDOT has committed funds in excess of 4.3 million dollars in the 2012–2014 funding plan to obtain the right-of-way and for wetland mitigation at the chosen location. This commitment of funds supports the fact that IDOT has selected the site for the highway. Thus, there are no other facts that need to be resolved for the court to determine whether IDOT complied with sections 314.23(3) and 314.24 when it decided to locate the Highway 100 extension.

*Id.* (internal citations omitted).

Here, the factual scenario presented is more akin to that in *Citizens for Responsible Choices*. Covington and Vasquez have not requested Medicaid pre-authorization, their Medicaid providers have not evaluated the request, and no notice of decision had been issued. The district court determined that until their Medicaid providers deny them coverage, the controversy is purely abstract because they have not been adversely affected in a concrete way. We agree. Although the ICRA amendment is clearly calculated to allow Medicaid providers to

deny gender-affirming surgical procedures to transgender Iowans, nothing prohibits Medicaid providers from allowing such a claim. Thus, any dispute is speculative until a denial occurs and the matter is not ripe for adjudication.

## II. Injunctive Relief.

Next, we address the denial of the petitioners' motion for injunctive relief. Because the question of whether to issue a temporary injunction rests within the discretion of the district court, we review the denial for an abuse of discretion. *See Lewis Investments, Inc. v. City of Iowa City*, 703 N.W.2d 180, 184 (Iowa 2005).

A temporary injunction is available only if the party seeking injunctive relief shows the likelihood of success on the merits of the underlying claim. *See id.* In other words, in order to grant temporary injunctive relief, the court must find it is likely the petitioners will succeed in obtaining a permanent injunction. *See id.* Because the court may grant permanent injunctive relief only if there is no other way to avoid irreparable harm to the plaintiff, it will not issue if there is an adequate remedy at law available. *Id.* at 185; *see also Ney v. Ney*, 891 N.W.2d 446, 451 (Iowa 2017) ("Generally, a party seeking an injunction must prove '(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is [not another] adequate [means of protection] available.'" (citation omitted) (alteration in original)).

In denying temporary injunctive relief, the district court determined that the petitioners have an adequate remedy at law by means of administrative challenge. It noted that the petitioners in *Good*, pursued and exhausted their administrative appeals, providing the district court a complete factual record from which the court

could engage in constitutional analysis. On this record, the supreme court determined that the administrative rule enacted by the Iowa Department of Human Services (DHS) to allow Medicaid providers to deny transgender Iowans gender-affirming surgery violated the ICRA. Although the legislature has amended the ICRA so that the administrative rule no longer violates the law, the question of whether Medicaid must provide a recipient with a gender-affirming surgical procedure still resides, ultimately, with the DHS. *See* Iowa Admin. Code r. 441-73.13 (providing that a Medicaid recipient may appeal a denial decision of their managed care organization "in accordance with the appeal process available to all persons receiving Medicaid-funded services as set forth in 441—Chapter 7"); *see also* Iowa Admin. Code r. 441-7.4(3)(b) (pertaining to the appeal of medical services coverage under Medicaid managed care). On that basis, the petitioners have a legally adequate means of legal redress through the DHS's administrative process.

**III. Standing.**

Finally, we address One Iowa's challenge to the district court's determination that it lacks standing. We review the decision to dismiss One Iowa from the case based on lack of standing for errors at law. *See Hawkeye Foodserv. Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 604 (Iowa 2012). In order to have standing, a party "must (1) have a specific personal or legal interest in the litigation, and (2) be injuriously affected." *Id.* at 606 (citation omitted). The first element is satisfied if the litigant alleges an injury different than that of the general population. *See id.* The second element is satisfied when the injury is concrete and actual or imminent rather than conjectural or hypothetical. *See id.* In

dismissing it as a party to the action, the district court determined that One Iowa failed to show the required actual or imminent injury to maintain standing. As stated above, we agree that any injury is hypothetical or speculative at this time.

The district court also found that One Iowa failed to show it has representational standing. An organization may rest its right to sue on the rights of its members. *Citizens for Washington Square v. City of Davenport*, 277 N.W.2d 882, 886 (Iowa 1979) (citing *Hunt v. Washington Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977)); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 65-66 (1997) (stating that an association has standing "only if its members would have standing in their own right"). But in order to do so, it "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Hunt*, 432 U.S. at 342. As stated above, the matter is not ripe for adjudication and therefore is not justiciable. As such, One Iowa is without standing to bring this action. It is seeking general vindication of the public interest in seeing that the legislature acts in conformity with the constitution "is an admirable interest, but not one that is alone sufficient to establish the personal injury required for standing." *See Godfrey v. State*, 752 N.W.2d 413, 424 (Iowa 2008).

Because the district court committed no legal error or abuse of discretion in dismissing this action for declaratory judgment and injunctive relief, we affirm.

**AFFIRMED.**