# IN THE COURT OF APPEALS OF IOWA

No. 3-1115 / 13-0635
Filed February 5, 2014


LORETTA B. MEALY, in Her Capacity
as Executor of the ESTATE OF
TERRENCE L. MEALY,
    Plaintiff-Appellant,

vs.

NASH FINCH COMPANY,
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, J. Hobart

Darbyshire (partial summary judgment) and Nancy S. Tabor (trial), Judges.


The Estate of Terrence Mealy appeals the dismissal of its request for a

declaration of the meaning of a phrase used in a restrictive covenant in a deed.

**REVERSED AND REMANDED.**


Nicholas J. Kilburg and Patrick M. Roby of Elderkin & Pirnie, P.L.C., Cedar

Rapids, for appellant.

Don Heeman of Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis,

Minnesota, and Joseph W. Younker of Bradley & Rile, P.C., Iowa City, for

appellee.


Heard by Danilson, C.J., and Vaitheswaran and Mullins, JJ.  Tabor, J.,

takes no part.

**DANILSON, C.J.**

The Estate of Terrence Mealy[1] appeals the dismissal of its request for a declaration of the meaning of a phrase used in a restrictive covenant in a deed. The district court erred in finding the question was not ripe for review. We reverse and remand for further proceedings.

**I. Background Facts and Proceedings.**

Mealy purchased the commercial property at issue from the Nash Finch Company in 2004. The property is located in downtown Muscatine, Iowa. A restrictive covenant in the special warranty deed reads, in part:

> The Property (or any part thereof) hereby conveyed shall not be used or occupied as a supermarket or grocery store, which shall be defined as any store or department primarily devoted to the retail sale of food for off-premises consumption. Furthermore, in addition, no portion of the Property hereby conveyed shall be used for parking, ingress or egress for any property owned, used or occupied for any of the foregoing uses.
> The restriction set forth above commences on the date of this conveyance and shall remain in effect for a period of three (3) years from and after the date of this conveyance, or until Grantor, or any of its affiliates, subsidiaries, successors or assigns, or any entity to which Grantor, or any of its affiliates, subsidiaries, successors or assigns supplies groceries to, ceases to operate a retail grocery store in Muscatine, Iowa, whichever occurs last.

Mealy filed this declaratory judgment action against Nash Finch in September 2009, seeking a declaration that the restrictive covenant was unenforceable. In July 2010, notwithstanding a resistance by Nash Finch, Mealy was allowed to amend the petition, adding a second count for declaratory relief. Mealy asked that the court interpret the restrictive covenant. Mealy urged that

---

[1] Terrence Mealy filed this action. After he passed away in February 2011, Loretta B. Mealy, as executor of his estate, was substituted as plaintiff. We will refer to the plaintiff as Mealy.

the court find the "primarily devoted to" language meant more than fifty percent of the business's revenue be derived from the retail sale of food for off-premises consumption.

Nash Finch filed a motion for summary judgment on both counts of the declaratory judgment action. As to count two, Nash Finch argued the matter was not ripe for adjudication. Mealy resisted the motion and in support of the resistance submitted Terrance Mealy's deposition. During the deposition testimony, Terrance Mealy explained that he proposed a tenant, Dollar General and even offered $5000 to rescind the restrictive covenant. Both proposals were rejected by Nash Finch.

On November 30, 2010, the district court (Judge Darbyshire) found a genuine issue of material fact remained with regard to whether the restrictive covenant unduly and unreasonably interfered with the interests of public and denied summary judgment as to the first count. As to Mealy's request for judicial interpretation of the covenant's "primarily devoted to" language, the court found no justiciable controversy existed and dismissed the second count. The court wrote,

> Presently, Mealy has no concrete plans to lease or sell the Property for use as a grocery store, and no such arrangements have been recently proposed by any individual or entity. A declaratory judgment cannot be had on the possibility that Mealy will one day locate such a lessor or purchaser for the Property. "[T]he danger or dilemma of which plaintiff complains must be present and not speculative or contingent on the happening of hypothetical future events." 26 C.J.S. Declaratory Judgments § 28, at 102-03. As a result, the Court determines that this matter is not yet ripe for adjudication and summary judgment as to this particular issue is therefore granted.

A bench trial on the remaining count was held March 20, 2013. Mealy sought to introduce evidence of recent ongoing negotiations with Kum & Go and communications between the parties. Nash Finch moved in limine to exclude such evidence as irrelevant to the remaining issue before the court.

Before evidence was presented, the following dialogue between Mealy's counsel and the court occurred:

> MR. ROBY: . . . The petitioner originally said basically that the language that is complained of in Exhibit C of the lease that basically the property can't be used for purposes of a grocery store was—should be stricken for a lot of different reasons. We then amended to say we wanted a declaration that the language means that you have to have at least 50 percent of your sales of groceries from a grocery store.
> Well, in his ruling on the Motion for Summary Judgment, Judge Darbyshire said, I'm not going to rule on that because it's hypothetical. Well, our brief evidence is going to be it's not a hypothetical because it de[t]ers prospective purchasers. . . . [S]o our evidence is going to be very brief . . . from Kevin Shea who is an attorney from Cedar Rapids who has taken over Mr. Mealy's various business enterprises, that that language places a cloud on the ability to sell the property, which is why we're offering the Kum & Go evidence . . . .
> THE COURT: So you're asking me to reconsider a previous summary judgment motion. Is that correct?
> MR. ROBY: Well, I think the Court can, but if the Court doesn't, we can't appeal that ruling until the entire case is disposed of, so we're looking for a ruling and Judge Darbyshire said no, and our—I don't expect the Court to reverse Judge Darbyshire, but—
> THE COURT: So then what's your purpose of presenting that evidence?
> MR. ROBY: Presenting that evidence is so that we have a record because we now have somebody who says we're interested in buying it and Nash Finch says a convenience store is a grocery store and so we can't sell it, so we need somebody to interpret that language and it looks to us like it's going to be up to the appellate courts and say Judge Darbyshire was wrong and we interpret it to say . . . .
> . . . .
> THE COURT: . . . [I]t sounds like you are now wanting to almost amend your pleadings to say that you do now have a

prospective purchaser that you didn't have before, and you want the Court to determine whether that clause is applicable to our prospective purchaser because . . . [y]ou didn't have one in 2010 . . . . . but now you're saying that you actually have evidence that there is somebody who wants to purchase or to lease that property and these guys are saying they can't because of the restriction?

MR. ROBY: What we're saying, your Honor, is that the language—Mr. Shea will testify is that language is such that it causes prospective purchasers—

THE COURT: And that's what you said to Judge Darbyshire.

MR. ROBY: Exactly the same argument.

. . . .

THE COURT: . . . You did ask [Judge Darbyshire] to reconsider [his ruling on count two], and I believe he denied that. You know, I understand you're going to appeal that, and that's absolutely your right, and you want the Court to determine whether you have to have—whether you actually have to have a prospective buyer and whether you actually have to have a lease in order for it to be ripe to be adjudicated.

MR. ROBY: That's exactly the issue. . . . I just want to make an offer of proof so I have a record.

The district court granted Nash Finch's motion in limine and ruled that the proposed evidence of the Kum & Go potential purchase in July 2012 was not relevant to the issue of whether the covenant was in violation of public policy, and that the time for amending pleadings to add the issue of a prospective sale had passed. The court allowed Mealy to make an offer of proof.

The district court proceeded to evidence on count one and ruled in Nash Finch's favor, holding the restrictive covenant enforceable because it is not unreasonable or against public interest. The court also declined to reconsider the partial summary judgment granted on the second count.

On appeal, Mealy challenges the ruling on summary judgment that the interpretation of the covenant's "primarily devoted to" language was not ripe for adjudication.

**II. Scope and Standard of Review.**

This is a review of the ruling granting Nash Finch partial summary judgment on the second count seeking declaratory relief. Our review is for errors of law. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013).

**III. Discussion.**

Iowa Rule of Civil Procedure 1.1102 provides:

> Any person interested in an oral or written contract, . . . , or whose rights, status or other legal relations are affected by any . . . contract or franchise, may have any question of the construction or validity thereof or arising thereunder determined, and obtain a declaration of rights, status or legal relations thereunder.

"This rule allows a party to seek a declaratory judgment." *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 648 (Iowa 2013). The declaratory judgment rules "are to be liberally construed in order to carry out their purpose." *Green v. Shama*, 217 N.W.2d 547, 551 (Iowa 1974); *accord Bechtel v. City of Des Moines*, 225 N.W.2d 326, 330 (Iowa 1975). As one court has explained, "In general, all that is required for a declaratory judgment action is the existence of a justiciable and ripe controversy between adversely interested parties." *Carver v. Heikkila*, 465 N.W.2d 183, 185 (S.D. 1991).

Our courts have found that "[o]ne of the most troublesome questions in this field of law is, when does a justiciable controversy arise, as distinguished from a mere abstract question?" *Wesselink v. State Dep't of Health*, 80 N.W.2d 484, 486 (Iowa 1957). In *Wesselink*, the court stated,

> Our declaratory judgment rules necessarily deal with present rights, and we must examine carefully each petition to determine

whether such legal right is in issue between the parties litigant. It has often been said it is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative. Borchard, in his Declaratory Judgments, Second Edition, pages 41-42, states:

> Were the controversy not genuine or ripe for judicial decision, with a plaintiff and defendant having actually or potentially opposing interests, with a res or other legal interest definitely affected by the judgment rendered and the judgment a final determination of the issue, it would fail to present a justiciable dispute—not because it seeks a declaratory judgment, but because it lacks the elements essential to invoke any judgment from judicial courts.

We search, then, for an "antagonistic assertion and denial of right" and if found and other proper allegations appear, the court may then entertain the question of whether the plaintiffs' claim is proper and justified.

80 N.W.2d at 486-87 (citation omitted).

"If a claim is not ripe for adjudication, a court is without jurisdiction to hear the claim and must dismiss it." *Iowa Coal Min. Co. v. Monroe Cnty.*, 555 N.W.2d 418, 432 (Iowa 1996). There must be "'a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.'" *Citizens for Responsible Choices v. City of Shenandoah,* 686 N.W.2d 470, 474 (Iowa 2004) (citation omitted). "When considering a ripeness issue, a court must generally address two factors. First, are the relevant issues sufficiently focused so as to permit judicial resolution without further factual development? Second, would the parties suffer any hardship by the postponement of judicial action?" *Iowa Coal*, 555 N.W.2d at 432; *see also Sierra Club*, 832 N.W.2d at 649.

*A. Error Preservation.* Nash Finch agrees that Mealy preserved error at the summary judgment stage, but not at the trial stage of the proceedings. In

essence the court's order in November 2010 was a grant of partial summary judgment dismissing count two of the petition. Mealy asked the district court to reconsider the ruling. The trial court had the power to correct the partial summary judgment ruling. *See Mason City Prod. Credit Ass'n v. Van Duzer,* 376 N.W.2d 882, 885 (Iowa 1985). However, the district declined to modify the ruling, and we will restrict our review to the record made in respect to the motion for summary judgment.[2]

*B. Sufficiently focused issue.* Mealy asks the court to construe the deed's restrictive covenant: "any store or department primarily devoted to the retail sale of food for off-premises." Mealy contends the phrase "primarily devoted to" permits the property to be used by a business engaged in the retail sale of food for off-premises consumption so long as the business's sales make up not more than fifty percent of the store's revenues.

In November 2010, the district court ruled, "There can simply be no justiciable controversy prior to Mealy's attainment of a tenant seeking to use the property to sell some percentage of groceries." However, even if Mealy had a ready tenant or buyer, the issue would be the same. The issue, the interpretation of the restrictive covenant, would not be narrowed. The existence of a tenant or buyer would only allow the interpretation of the restrictive covenant to be applied to the specific sales anticipated by the tenant or buyer. We conclude error was preserved and the district court read rule 1.1102 too narrowly because here the

---

[2] Moreover, Mealy has not cited any authority that an offer of proof made during a trial may serve to support a resistance to a motion for summary judgment, absent an agreement of the parties. Here, there was no agreement between the parties, and the motion was ultimately not reconsidered.

relevant issue is sufficiently focused to permit judicial resolution without further development.

We also note Nash Finch alleged in its amended answer—and contended in its "Response to Defendant's Statement of Undisputed Material Facts"—that the "primarily devoted to" language in the deed "speaks for itself." We do not think this argument aids in determining if there is a controversy ripe for adjudication. Simply because the phrase is unambiguous does not mean relief may not be granted. Where no extrinsic evidence is submitted and the phrase involves commonly understood words, its interpretation should be "resolved by the court as a matter of law, based upon its examination of the words used." *Farm Bureau Mutual Ins. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981) (holding the meaning of commonly understood words to be clear, entitling party to judgment as a matter of law).

*C. Mealy will suffer hardship by the postponement of judicial action.* Mealy contends the district court's ruling denying declaratory relief places him in a "catch 22." Mealy argues that she cannot find a tenant or buyer without an interpretation of the covenant and cannot obtain a declaratory judgment interpreting the restrictive covenant without a tenant or buyer.

Mealy argues the "primarily devoted to" language has "warded off" prospective purchasers or renters in the past and affects her rights under the purchase agreement, and her practical ability to solicit tenants or buyers. She contends, "Without an interpretation or construction of the purported restrictive

covenant, Mealy will not know which tenants she can solicit for the property, and [Nash Finch] will continue to infringe on her asserted rights under the contract."

Our supreme court has explained the practical need to stabilize legal relationships in stating,

> Relief may also be denied if no irreparable injury is apparent, but such determination must usually await a full hearing on the matter. Certainly the purpose of this relief is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relationship either as to present or prospective obligations. If that purpose appears, the court should stabilize if possible, the legal relations of the parties.

*Wesselink*, 80 N.W.2d at 487.

While we do not address whether or not Nash Finch has infringed upon Mealy's rights under the deed, we do give weight to Mealy's stated uncertainty as to sphere of prospective buyers or renters of the property. *Citizens for Responsible Choices* involved a suit brought against a city by a nonprofit citizens group objecting to a public improvement project that included a recreational lake and a public park. 686 N.W.2d at 472. As explained by our supreme court in *Sierra Club*,

> There, the city had to issue bonds and establish a water recreational area before proceeding with the project. Before the city could issue the bonds, the Code required the city to hold a public hearing. At the time of the suit, the public hearing had not taken place nor had the city established the recreational area. Under these facts, we held the action failed for ripeness.

832 N.W.2d at 649 (citations omitted).

In *Sierra Club*, an environmental organization filed a petition for judicial review, challenging the department of transportation's decision to locate a highway adjacent to and through two nature preserves. *Id*. at 638-39. The

Sierra Club sought injunctive and declaratory relief. *See id.* at 639. The district court granted the department's motion to dismiss "because the Sierra Club had not exhausted administrative remedies by first seeking a declaratory order from [the department] under [Iowa Code] section 17A.9(1)(a)." *Id.* On appeal, the supreme court addressed the court of appeals' ruling that the matter was not "ripe" for district court judicial review. *See id.* at 648-49. The supreme court applied the relevant two-factor inquiry: (1) are the relevant issues sufficiently focused so as to permit judicial resolution without further factual development and (2) would the parties suffer any hardship by the postponement of judicial action, *see id.* at 649, and concluded it was facing a "different situation" than was presented in *Citizens*:

> According to the record before us, IDOT has made the decision to locate the Highway 100 extension adjacent to and through two nature preserves. There are no other decisions to make concerning the highway's location. Although the actual building of the highway may be contingent on future funding, IDOT has committed funds in excess of 4.3 million dollars in the 2012–2014 funding plan to obtain the right-of-way and for wetland mitigation at the chosen location. This commitment of funds supports the fact that IDOT has selected the site for the highway. Thus, there are no other facts that need to be resolved for the court to determine whether IDOT complied with sections 314.23(3) and 314.24 when it decided to locate the Highway 100 extension.
>
> As for whether the Sierra Club would suffer any hardship by postponing judicial action, we answer this question in the affirmative. By choosing the location, acquiring the right-of-way, and engaging in wetland mitigation, the Highway 100 project is imminent. Thus, we find the Sierra Club will suffer hardship by postponing judicial action, because IDOT is actively obtaining the right-of-way necessary for locating the Highway 100 extension adjacent to and through two nature preserves.

*Id.*

Mealy's position is similar to the Sierra Club's: Nash Finch is actively taking a position that is contrary to Mealy's interpretation. Mealy already proposed one tenant, Dollar General, which was rejected by Nash Finch, and offered $5000 to Nash Finch to rescind the restrictive covenant.[3] Of course, Nash Finch had no obligation to accept the financial offer.

However, Mealy should not have to continually seek approval from Nash Finch to assure its satisfaction of a tenant or buyer to avoid future litigation. The restrictive covenant does not require the sale or use of the property to be approved by Nash Finch. In essence, without an adjudication, Nash Finch would continue to play hide the ball concerning its interpretation of the phrase, "primarily devoted to," and thereby seemingly have the authority to preapprove any prospective tenant or buyer.[4]

**IV. Conclusion.**

We conclude Mealy has sufficiently shown the requisite focused issue and that hardship will be suffered by the postponement of judicial action such that the action was ripe for adjudication. We therefore reverse the entry of partial summary judgment dismissing count two of the petition and remand for further proceedings on Mealy's request for declaratory relief.

**REVERSED AND REMANDED.**

---

[3] During Terrance Mealy's deposition on June 30, 2010, filed as an exhibit relative to the motion for summary judgment, Mealy stated that Dollar General wanted to rent the property and he would even give Nash Finch $5000 if he could rent to them—he was told, "no."

[4] Notwithstanding its position at trial and briefing on appeal, Nash Finch finally acknowledged near the end of its oral argument that in its opinion the restrictive covenant would only prevent a prospective tenant or buyer from having more than fifty percent of its retail sales for food for off-premises consumption.