# IN THE SUPREME COURT OF IOWA

No. 18–1158

Filed March 8, 2019

**EERIEANNA GOOD** and **CAROL BEAL,**

Appellees,

vs.

**IOWA DEPARTMENT OF HUMAN SERVICES,**

Appellant.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

The Iowa Department of Human Services appeals a district court decision striking down Iowa Administrative Code rule 441—78.1(4), which prohibits Medicaid coverage for gender-affirming surgery. **AFFIRMED.**

Thomas J. Miller, Attorney General, Matthew K. Gillespie and Anagha Dixit, Assistant Attorneys General, for appellant.

Rita Bettis Austen of ACLU of Iowa Foundation, Des Moines, John Knight of ACLU Foundation LGBT & HIV Project, Chicago, Illinois, and F. Thomas Hecht, Tina B. Solis, and Seth A. Horvath of Nixon Peabody LLP, Chicago, Illinois, for appellees.

Bob Rush of Rush & Nicholson, PLC, Cedar Rapids, and Steve Sanders of Maurer School of Law, Indiana University, Bloomington,

Indiana, for amici curiae Iowa Scholars of Law, History, Bioethics, Gender, and Sexuality.

Paige Fiedler of Fiedler Law Firm, P.L.C., Johnston, Robert R. Stauffer and Lindsey A. Lusk of Jenner & Block LLP, Chicago, Illinois, and Devi M. Rao of Jenner & Block LLP, Washington, D.C., for amici curiae The American Medical Association, The Iowa Medical Society, The American College of Physicians, Mental Health America, National Association of Social Workers, and GLMA: Health Professionals Advancing LGBT Equality.

Sharon Malheiro and Katelynn T. McCollough of Davis Brown Law Firm, Des Moines, for amici curiae One Iowa, Individual Transgender Iowans, and Allies.

Joshua Matz and John C. Quinn of Kaplan Hecker & Fink, New York, New York, and Joseph C. Glazebrook, Des Moines, for amici curiae Lambda Legal Defense and Education Fund, Inc., National Center for Transgender Equality, Transgender American Veterans Association, Transcend Legal, Transgender Legal Defense and Education Fund, Transgender Allies Group, Transgender Resource Center of New Mexico, and The Southern Arizona Gender Alliance.

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, and Matt M. Fogelberg, and Paul E. Bateman Jr. of Sidley Austin LLP, Chicago, Illinois, for amici curiae National Health Law Program, National Women's Health Network, and Chicago Lawyers' Committee for Civil Rights.

Katie Ervin Carlson of Timmer & Judkins, P.L.L.C., West Des Moines, and Lindsay Nako and Daniel J. Nesbit of Impact Fund, Berkeley, California, for amici curiae Impact Fund, et al.

**CHRISTENSEN, Justice.**

In 2007, the Iowa legislature amended Iowa Code chapter 216—the Iowa Civil Rights Act (ICRA)—to add "gender identity" to the list of protected characteristics. *See* 2007 Iowa Acts ch. 191, §§ 5, 6 (codified at Iowa Code § 216.7(1)(*a*) (2009)). We must now determine whether the language of Iowa Administrative Code rule 441—78.1(4) pertaining to the prohibition of Iowa Medicaid coverage of surgical procedures related to "gender identity disorders" violates the ICRA or the Iowa Constitution. The appellees are transgender women and Iowa Medicaid recipients who sought Medicaid coverage for gender-affirming surgical procedures to treat their gender dysphoria. The appellees' managed care organizations (MCOs) denied coverage for their surgeries pursuant to rule 441—78.1(4). An administrative law judge (ALJ) and the director of the Iowa Department of Human Services (DHS) affirmed the MCOs' decisions based on rule 441—78.1's exclusion of coverage for gender-affirming procedures.

After exhausting intra-agency appeals, the appellees sought judicial review. The district court consolidated their cases and concluded the challenged portions of rule 441—78.1(4) violate the ICRA and the equal protection clause of the Iowa Constitution. The district court also determined the DHS's denial of Medicaid coverage for gender-affirming surgeries was reversible because it would result in a disproportionate negative impact on private rights and the decision was unreasonable, arbitrary, and capricious. We retained the DHS's appeal. On our review, we affirm the judgment of the district court because the rule violates the ICRA's prohibition against gender-identity discrimination. Because of this, we adhere to the doctrine of constitutional avoidance and do not address the constitutional claim.

**I. Background Facts and Proceedings.**

EerieAnna Good and Carol Beal are transgender women who have gender dysphoria. Gender dysphoria is a diagnostic category in the *Diagnostic and Statistical Manual of Mental Disorders-V* (DSM-V), codified as diagnostic code section 302.85, which "refers to the distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 451 (5th ed. 2013). The DSM-V provides the following diagnostic criteria for gender dysphoria in adults:

> A. A marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months duration, as manifested by at least two of the following:
>
> 1. A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics . . . .
>
> 2. A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender . . . .
>
> 3. A strong desire for the primary and/or secondary sex characteristics of the other gender.
>
> 4. A strong desire to be of the other gender (or some alternative gender different from one's assigned gender).
>
> 5. A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender).
>
> 6. A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).
>
> B. The condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

*Id.* at § 302.85, at 452–53.

At their administrative hearings, Good and Beal each entered into the record an affidavit in support of their appeal from Dr. Randi Ettner, Ph.D., a specialist and international expert in the field of gender dysphoria. Dr. Ettner concluded that the findings of the Iowa Foundation Report, the DHS Rulemaking Notice, and the DHS Rule Adoption Notice used to justify rule 441—78.1(4) "are not reasonably supported by scientific or clinical evidence, or standards of professional practice, and fail to take into account the robust body of research that surgery relieves or eliminates Gender Dysphoria." She explained, "Without treatment, gender dysphoric individuals experience anxiety, depression, suicidality, and other attendant mental health issues." Dr. Ettner described the accepted standards of medical care to alleviate gender dysphoria, which involve the following options: socially transitioning to live consistently with one's gender identity, counseling, hormone therapy, and gender-affirming surgery to conform one's sex characteristics to one's gender identity. The State presented no evidence to the contrary.

According to Dr. Ettner, "[o]f those individuals who seek treatment for [g]ender [d]ysphoria, only a subset requires surgical intervention." Good and Beal are among the subset of individuals seeking treatment for gender dysphoria whose physicians have concluded that gender-affirming surgery is necessary to treat their gender dysphoria.

Good is a twenty-nine-year-old transgender woman and Medicaid recipient who was officially diagnosed with gender dysphoria in 2013, though she began presenting herself as a female fulltime in 2010. Good began hormone therapy in 2014 and legally changed her name, birth certificate, driver's license, and social security card to align with her gender identity in 2016. Good's gender dysphoria intensifies her depression and anxiety. After her healthcare providers determined that

surgery was medically necessary to treat her gender dysphoria, Good initiated the process to seek Medicaid coverage of her gender-affirming orchiectomy procedure from her MCO, AmeriHealth Caritas Iowa (AmeriHealth), in January 2017.

Beal is a forty-three-year-old transgender woman and Medicaid recipient who was officially diagnosed with gender dysphoria in 1989. Beal began presenting herself as a female fulltime at the age of ten and began hormone therapy in 1989. She legally changed her name, birth certificate, driver's license, and Social Security card to align with her gender identity in 2014. Beal experiences depression and anxiety due to her gender dysphoria. Beal's healthcare providers have concluded gender-affirming surgery is medically necessary to treat her gender dysphoria. She began seeking Medicaid coverage for a gender-affirming vaginoplasty, penectomy, bilateral orchiectomy, clitoroplasty, urethroplasty, labiaplasty, and preineoplasty from her MCO, Amerigroup of Iowa Inc. (Amerigroup), in June 2017.

Medicaid is a joint federal-state program established under Title XIX of the Social Security Act that helps states provide medical assistance to eligible low-income individuals. *See Exceptional Persons, Inc. v. Iowa Dep't of Human Servs.*, 878 N.W.2d 247, 248–49 (Iowa 2016); *see generally* Iowa Code ch. 249A (2018). The Iowa DHS manages Iowa's Medicaid program consistent with state and federal requirements through a managed care model that requires Medicaid recipients' enrollment in an MCO. *See Exceptional Persons, Inc.*, 878 N.W.2d at 248; Iowa Admin. Code r. 441—73.3. The MCO is required to "provide, at a minimum, all benefits and services deemed *medically necessary* that are covered under the contract with the agency" in accordance with the DHS's standards. Iowa Admin. Code r. 441—73.6(1) (emphasis added).

Iowa Medicaid generally provides coverage for medically necessary services and supplies provided by physicians subject to a few exclusions and limitations.

> For the purposes of this program, cosmetic, reconstructive, or plastic surgery is surgery which can be expected primarily to improve physical appearance or which is performed primarily for psychological purposes or which restores form but which does not materially correct or materially improve the bodily functions. When a surgical procedure primarily restores bodily function, whether or not there is also a concomitant improvement in physical appearance, the surgical procedure does not fall within the provisions set forth in this subrule. Surgeries for the purpose of sex reassignment are not considered as restoring bodily function and are excluded from coverage.
>
> . . . .
>
> b. Cosmetic, reconstructive, or plastic surgery performed in connection with certain conditions is specifically excluded. These conditions are:
>
> . . . .
>
> (2) Procedures related to transsexualism, hermaphroditism, *gender identity disorders*, or body dysmorphic disorders.
>
> (3) Cosmetic, reconstructive, or plastic surgery procedures performed primarily for psychological reasons or as a result of the aging process.
>
> (4) Breast augmentation mammoplasty, surgical insertion of prosthetic testicles, penile implant procedures, and surgeries for the purpose of sex reassignment.
>
> . . . .
>
> d. Following is a partial list of cosmetic, reconstructive, or plastic surgery procedures which are not covered under the program. This list is for example purposes only and is not considered all-inclusive.
>
> . . . .
>
> (2) Cosmetic, reconstructive, or plastic surgical procedures which are justified primarily on the basis of a psychological or psychiatric need.
>
> . . . .
>
> (15) Sex reassignment.

Iowa Admin. Code r. 441—78.1(4)(*b*)(2)–(4), (*d*)(2), (15) (emphasis added).

Good filed her request for Medicaid preapproval from AmeriHealth to cover the expenses of her gender-affirming surgical procedure on January 27, 2017. AmeriHealth denied Good's request based on the rule excluding any surgical procedure for the purpose of sex reassignment. Good initiated an internal appeal, which AmeriHealth also denied. Good subsequently appealed AmeriHealth's denial of her preapproval request to cover the expenses of her gender-affirming surgery to the DHS. The administrative law judge (ALJ) preserved Good's constitutional challenge to the rule excluding coverage for gender-affirming surgery and affirmed AmeriHealth's decision, noting the rule prohibited coverage for Good's requested procedure. Good appealed the ALJ decision to the director of the DHS, who adopted the ALJ's decision and determined the DHS lacked jurisdiction to review Good's constitutional challenge to the rule.

Good filed a petition for judicial review in district court on September 21, arguing Iowa Administrative Code rule 441—78.1(4) violates the ICRA's prohibitions against sex and gender identity discrimination and the equal protection clause of the Iowa Constitution. She also claimed the DHS's application of the rule creates a disproportionate negative impact on private rights and is arbitrary and capricious. The DHS filed a preanswer motion to dismiss for failure to state a claim upon which relief can be granted, which the district court denied on November 27.

Beal filed her request for Medicaid preapproval from Amerigroup to cover the expenses of her gender-affirming surgical procedures on June 8. Amerigroup denied Beal's request based on the rule excluding surgical procedures for the purpose of sex reassignment. Beal initiated an internal appeal, which Amerigroup also denied. Beal subsequently appealed Amerigroup's denial of her preapproval request to cover the expenses of

her gender-affirming surgery to the DHS. The ALJ preserved Good's constitutional challenges to the rule excluding coverage for gender-affirming surgery and affirmed Amerigroup's decision, noting the rule prohibited coverage for Beal's requested procedures. Beal appealed the ALJ decision to the director of the DHS, who adopted the ALJ's decision and determined the DHS lacked jurisdiction to review Beal's constitutional challenge to the rule.

Beal filed a petition for judicial review in district court on December 15 presenting the same arguments as Good. The DHS also filed a motion to dismiss on Beal's case, claiming Beal failed to state a claim upon which relief can be granted. The district court denied this motion and consolidated Good's case with Beal's case on January 26, 2018.

Following briefing on the merits and a hearing, the district court reversed the DHS's decision to deny Good and Beal Medicaid coverage for their gender-affirming surgical procedures. The district court concluded the DHS is a public accommodation under the ICRA, and rule 441—78.1(4), which denies coverage for gender-affirming surgeries, violates the ICRA's prohibition on gender-identity discrimination. However, the district court rejected appellees' claim that the rule also violates the ICRA's prohibition on sex discrimination, relying on our holding in *Sommers v. Iowa Civil Rights Commission,* which held that sex discrimination under the ICRA does not include "transsexuals." 337 N.W.2d 470, 474 (Iowa 1983). The district court also concluded rule 441—78.1(4) violates the equal protection clause of the Iowa Constitution. Moreover, the district court determined the DHS's decision to enforce rule 441—78.1(4) should be reversed because it had a grossly disproportionate negative impact on private rights and was arbitrary and capricious. The DHS appealed the district court ruling, and we retained the appeal.

## II.  Standard of Review.

"Iowa Code section 17A.19 governs judicial review of this agency action."  *Cox v. Iowa Dep't of Human Servs.*, 920 N.W.2d 545, 549 (Iowa 2018); *see also* Iowa Code § 17A.19.  "We apply the standards set forth in Iowa Code chapter 17A in our judicial review of agency decision-making to determine whether our conclusion is the same as the district court."  *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 242 (Iowa 2018).  It is proper for a district court to grant relief "if the agency action prejudiced the substantial rights of the petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(*a*) through (*n*)."  *Id.* (quoting *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017)).  The burden is on the party challenging the agency action.  *Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 207 (Iowa 2014).  "We affirm the district court decision when we reach the same conclusion."  *Brewer-Strong*, 913 N.W.2d at 242.  "Although the DHS is the state agency administering Medicaid benefits, we decline to give deference to the DHS interpretation of the [Medicaid] Act and the DHS's rules and regulations regarding Medicaid."  *Cox*, 920 N.W.2d at 549.  Thus, we review the DHS's interpretation of the law de novo.  *See Bearinger v. Iowa Dep't of Transp.*, 844 N.W.2d 104, 106 (Iowa 2014).

## III.  Analysis.

The DHS raises several challenges to the district court's ruling on appeal.  First, the DHS argues it is not a public accommodation under the ICRA.  Second, the DHS maintains rule 441—78.1(4) does not violate the ICRA.  Third, the DHS claims rule 441—78.1(4) does not violate the equal protection clause of the Iowa Constitution.  Fourth, the DHS contends the district court erred in reversing the DHS's decision based on its finding that rule 441—78.1(4) had a disproportionate negative impact on private

rights. Finally, the DHS challenges the district court ruling that rule 441—78.1(4) is arbitrary and capricious. We address these claims as necessary.

**A. Public Accommodations Under the ICRA.** Iowa Code section 216.7 addresses "[u]nfair practices—accommodations or services." In relevant part, this section provides,

> It shall be an unfair or discriminatory practice for any . . . manager . . . of any public accommodation or any agent or employee thereof . . . [t]o refuse or deny any person because of . . .sex . . . [or] gender identity . . . in the furnishing of such accommodations, advantages, facilities, services, or privileges.

Iowa Code § 216.7(1)(*a*). Iowa Code section 216.2(13)(*b*) states that a public accommodation "includes each state and local government unit or tax-supported district of whatever kind, nature, or class that offers services, facilities, benefits, grants, or goods to the public, gratuitously or otherwise." *Id.* § 216.2(13)(*b*). The DHS challenges the district court's conclusion that it is a "public accommodation." It asserts that the term is limited to physical places, establishments, or facilities.

The ICRA does not define "government unit." "If the legislature has not defined words of a statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *State v. Romer*, 832 N.W.2d 169, 179 (Iowa 2013) (quoting *Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 516 (Iowa 2012)). Further, "[a]lthough the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent." *State v. Tague*, 676 N.W.2d 197, 201 (quoting *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 163 (Iowa 1999)). Here, our prior decisions, dictionary definitions, and the title of the statute prohibiting public accommodations from certain types of discrimination under the ICRA all support our conclusion that the

DHS is a "government unit" within the ICRA's definition of a "public accommodation."

Our prior cases discussing a "government unit" are limited, but our past use of the term supports our interpretation that public accommodations are not limited to a physical place, establishment, or facility. For example, in *Warford v. Des Moines Metropolitan Transit Authority*, we noted Iowa's statute governing tort liability of governmental subdivisions "anticipates that a 'municipality' will be some unit of local government." 381 N.W.2d 622, 624 (Iowa 1986). Further, the dictionary definitions of "unit" reinforce our holding that the DHS is a "government unit" within the ICRA's definition of a "public accommodation" when it issues benefits determinations concerning Medicaid. Though the dictionary has multiple definitions for the word "unit," the most applicable definition of "unit" defines it as "a single thing or person or group that is a constituent and isolable member of some more inclusive whole." *Unit, Webster's Third New International Dictionary* (unabr. ed. 2002). This definition aligns with *the Black's Law Dictionary* definition of "governmental unit" as "[a] subdivision, *agency*, department . . . or other unity of government of a country or state" because the DHS is a government agency. *Governmental Unit, Black's Law Dictionary* (10th ed. 2014) (emphasis added).

Additionally, Iowa Code section 216.2(13)(*b*) makes clear that a "public accommodation" includes a unit of state government that offers "benefits [or] grants . . . to the public." Medicaid is such a benefit or grant. Government benefits and grants are not normally dispersed in person at physical locations. This further undermines the DHS's limited view of what constitutes a public accommodation under the ICRA.

The title of the statute Good and Beal rest their ICRA claims on—"Unfair practices—accommodations or services"—also informs our determination that the legislature intended to include the DHS as a "public accommodation" under the ICRA. *See* Iowa Code § 216.7. The title of this section and its definition of a "public accommodation" reveal the legislature intended to include government agencies in its prohibition on discriminatory practices based on gender identity "in the furnishing of [an agency's] accommodations, advantages, facilities, services, or privileges." *See id.* § 216.7(1)(*a*). The DHS is an agency that furnishes Medicaid services through its implementation and oversight of the Iowa Medicaid services that MCOs provide. Therefore, it is a public accommodation under the ICRA.

Finally, while the ICRA does define "covered multifamily" as "[a] building consisting of four or more dwelling *units* if the building has one or more elevators" or "the ground floor *units* of a building consisting of four or more dwelling *units*," this usage of "unit" does not conflict with our interpretation of it in section 216.7 as the DHS claims. Iowa Code § 216.2(4) (emphasis added.) The use of the term "unit" to describe a "covered multifamily dwelling" is vastly different from the use of "government unit" within the definition of "public accommodation" given the context in which both terms are used. Thus, the legislature's references to the word "unit" to describe a structure does not inform or limit our definition of "government unit." For these reasons, we affirm the district court's ruling that the DHS is a public accommodation under the ICRA.

**B. The ICRA's Prohibition on Gender Discrimination.** The DHS maintains rule 441—78.1(4) does not discriminate based on gender identity because transgender Medicaid beneficiaries and nontransgender

Medicaid beneficiaries in Iowa alike are not entitled to gender-affirming surgical procedures. This position is based on the DHS's argument that the requested surgical procedures are performed primarily for psychological purposes. Further, the DHS claims the rule's explicit exclusion of gender-affirming surgeries and cosmetic surgery related to "transsexualism" is merely a specified example within the broader category of "cosmetic, reconstructive, and plastic surgeries" excluded from coverage under the rule.

In 2007, the Iowa legislature amended the ICRA to add "gender identity" to the list of protected groups. *See* 2007 Iowa Acts ch. 191, §§ 5, 6 (codified at Iowa Code § 216.7(1)(*a*) (2009)). Section 216.7(1)(*a*) provides that it is "unfair or discriminatory" for any "agent or employee" of a "public accommodation" to deny services based on "gender identity." Iowa Code § 216.7(1)(*a*). The ICRA's gender identity classification encompasses transgender individuals—especially those who have gender dysphoria—because discrimination against these individuals is based on the nonconformity between their gender identity and biological sex. This prohibition against denying coverage for Good's and Beal's gender-affirming surgical procedures extends to the director and staff of the DHS, as well as its agents, the MCOs.

The record does not support the DHS's position that rule 441—78.1(4) is nondiscriminatory because its exclusion of coverage for gender-affirming surgical procedures encompasses the broader category of "cosmetic, reconstructive, or plastic surgery" that is "performed primarily for psychological purposes." Iowa Admin. Code r. 441—78.1(4). The DHS expressly denied Good and Beal coverage for their surgical procedures because they were "related to transsexualism . . . [or] gender identity disorders" and "for the purpose of sex reassignment." *Id.* r. 441—

78.1(4)(*b*). Moreover, the rule authorizes payment for some cosmetic, reconstructive, and plastic surgeries that serve psychological purposes— e.g., "[r]evision of disfiguring and extensive scars resulting from neoplastic surgery" and "[c]orrection of a congenital anomaly." *Id.* r. 441—78.1(4)(*a*). Yet, it prohibits coverage for this same procedure if a transgender individual. *Id.* r. 441—78.1(4)(*b*).

Further, the history behind the rule supports our holding that the rule's express bar on Medicaid coverage for gender-affirming surgical procedures discriminates against transgender Medicaid recipients in Iowa under the ICRA. Nearly forty years ago, the United States Court of Appeals for the Eighth Circuit ruled in *Pinneke v. Preisser* that it was improper for the Iowa DHS to informally characterize sex reassignment surgery as "cosmetic surgery" in its denial of sex reassignment surgery. 623 F.2d 546, 548 n.2 (8th Cir. 1980). Prior to *Pinneke*, the DHS had an unwritten policy of excluding sex reassignment surgeries from Medicaid coverage based on Medicaid's coverage limitations on "cosmetic surgery" and "mental diseases." *Id.* at 548 n.2, 549–50. After the Eighth Circuit rejected this informal policy, the DHS amended the rule to clarify that the rule excluded Medicaid coverage for "sex reassignment procedures" and "gender identity disorders." 17 Iowa Admin. Bull. 730–34 (Nov. 9, 1994) (effective Feb. 1, 1995); *see also Smith v. Rasmussen*, 249 F.3d 755, 760 (8th Cir. 2001). Consequently, the rule expressly excludes Iowa Medicaid coverage for gender-affirming surgery specifically because this surgery treats gender dysphoria of transgender individuals. After the DHS amended the rule to bar Medicaid coverage for gender-affirming surgery, the legislature specifically made it clear that individuals cannot be discriminated against on the basis of gender identity under the ICRA. *See* 2007 Iowa Acts ch. 191, §§ 5, 6 (codified at Iowa Code § 216.7(1)(*a*) (2009)).

**C. Doctrine of Constitutional Avoidance.** Given our holding that rule 441—78.1(4)'s exclusion of Medicaid coverage for gender-affirming surgery violates the ICRA as amended by the legislature in 2007, we need not address the other issues raised on appeal. In doing so, we adhere to the time-honored doctrine of constitutional avoidance. *See, e.g., Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 219 (Iowa 2014); *State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 85 (Iowa 2014); *Mail Real Estate, LLC v. City of Hamburg*, 818 N.W.2d 190, 200 (Iowa 2012); *L.F. Noll Inc. v. Eviglo*, 816 N.W.2d 391, 398 (Iowa 2012); *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 73–74 (Iowa 2010). This doctrine "instructs us that we should 'steer clear of "constitutional shoals" when possible.'" *Nguyen v. State*, 878 N.W.2d 744, 751 (Iowa 2016) (quoting *Iowa Dist. Ct.*, 843 N.W.2d at 85). "Such judicial restraint is an essential component of our system of federalism and separation of powers." *State v. Williams*, 695 N.W.2d 23, 30 (Iowa 2005). The doctrine of constitutional avoidance recognizes the wisdom of this process, "and we continue to subscribe to it today." *Id.*

**IV. Conclusion.**

For the aforementioned reasons, we affirm the district court judgment.

**AFFIRMED.**

All justices concur except McDonald, J., who takes no part.