# IN THE COURT OF APPEALS OF IOWA

No. 20-0963
Filed August 4, 2021


**J. JESUS CARRERAS and LOS PRIMOS AUTO SALES, LLC d/b/a LOS PRIMOS AUTO SALES,**
    Plaintiffs-Appellants,

**vs.**

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


        A dealership and its owner appeal a district court ruling affirming an agency decision to revoke its license to sell cars. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**


        Todd M. Lantz and Elisabeth A. Archer of The Weinhardt Law Firm, Des Moines, for appellants.

        Thomas J. Miller, Attorney General, and Michelle E. Rabe, Assistant Attorney General, for appellee.


        Heard by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Jesus Carreras[1] appeals the judicial review of an agency decision to revoke his motor vehicle dealer license based on his federal conviction for structuring currency deposits. He contends his conviction should not have led to revocation because it was not "in connection with selling or other activity relating to motor vehicles" under Iowa Code section 322.3(12) (2019). Because the agency correctly interpreted that phrase, we affirm the revocation of Carreras's dealer license. But we find the district court improperly tolled enforcement of the revocation period. We reverse the tolling order and remand with instructions to reinstate Carreras's license five years from the date of his conviction.

## I. Facts and Prior Proceedings

Carreras and his wife, Martha, have owned and operated Los Primos Auto Sales, a used car dealership, for thirteen years. According to the agency record, between January 2014 and April 2017, customers sometimes paid cash for used cars. Either Carreras or Martha could deposit money into the business bank accounts. The couple testified they split up the deposits to be less than $10,000 to avoid "additional paperwork." They made several hundred deposits in this manner totaling $1.4 million. On some days, they made several deposits at different bank branches, all under the $10,000 reporting threshold.

In 2017, federal prosecutors charged Carreras with eight financial offenses. Carreras entered an agreement to plead guilty to one count of structuring transactions to evade reporting requirements, in violation of

---

[1] The petitioners include both Carreras and his business, Los Primos Auto Sales, LLC. For ease of reference, we will refer to them collectively as Carreras.

31 U.S.C. § 5324(3). He received a probationary sentence. But as a collateral consequence, the Iowa Department of Transportation (DOT) revoked his motor vehicle dealer license under Iowa Code section 322.3(12).

Carreras challenged his license revocation before an administrative law judge (ALJ) who rescinded the revocation, finding the structuring conviction was not "in connection with selling or other activity relating to motor vehicles." *See id.* The DOT challenged the ALJ decision, and the reviewing officer reversed.

Carreras then petitioned for judicial review. He also requested a stay of enforcement of the license revocation until the judicial review was decided. The district court granted the stay in March 2020. In July, the court upheld the license revocation. Carreras appealed the judicial review order and moved to extend the stay. The court granted Carreras's motion to extend the stay. But it also granted the DOT's request to toll the five-year license revocation period until the litigation concluded.

Carreras now appeals both the license revocation and the tolling of the revocation period.

## II. Scope and Standards of Review

Section 17A.19(10) of the Iowa Administrative Procedure Act governs our review of agency decision-making. *Niday v. Roehl Transport, Inc.*, 934 N.W.2d 29, 34 (Iowa Ct. App. 2019). On judicial review of an agency decision, the district court acts in an appellate capacity. *Id.* In assessing the judicial review order, "we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. If they are the same, we affirm; otherwise,

we reverse." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 519 (Iowa 2012) (quoting *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004)).

Here, the parties do not dispute the facts. "When factual findings are not challenged on appeal, but instead the claimed error is in the agency's interpretation of law, we decide if that interpretation was erroneous." *Niday*, 934 N.W.2d at 34. We defer to the agency's interpretation only if the legislature "clearly vested" the agency with discretionary authority to interpret the provision in question. *Neal*, 814 N.W.2d at 518. The parties appear to agree that the legislature did not vest the DOT with discretionary authority to interpret section 322.3(12). So we do not defer to the agency's interpretation. *See id.* at 519. And we apply "our own judgment if we conclude the [agency] made an error of law." *Id.*

Yet the DOT contends reversal is appropriate only if the agency's *application* of the law was "irrational, illogical, or wholly unjustifiable" because the legislature vested "administration" of this matter to the agency director under Iowa Code section 322.1. *See* Iowa Code § 17A(11)(c). To the extent resolution of this case involves the application of law to the facts, beyond the question of statutory interpretation, we give the agency decision appropriate deference. *See Drake Univ. v. Davis*, 769 N.W.2d 176, 183 (Iowa 2009).

Plus, Carreras raises a substantial-evidence claim. *See* Iowa Code § 17A.19(10)(f). Evidence is substantial if its quantity and quality "would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1). Our task is not to decide whether substantial evidence supports a different finding but

whether it supports the finding made by the reviewing officer. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011).

### III. Analysis

### A. Defining "In Connection With"

This first issue turns on the meaning of the phrase, "in connection with selling or other activity relating to motor vehicles," as it appears in section 322.3(12). Carreras argues the agency and the district court misinterpreted that statute. We set out the whole provision for context:

> A person who has been convicted of a fraudulent practice, has been convicted of three or more violations of section 321.92, subsection 2, or section 321.99, has been convicted of three or more violations of subsection 16 of this section in the previous three-year period, or has been convicted of any other indictable offense *in connection with selling or other activity relating to motor vehicles*, in this state or any other state, shall not for a period of five years from the date of conviction be an owner, salesperson, employee, officer of a corporation, or representative of a licensed motor vehicle dealer or represent themselves as an owner, salesperson, employee, officer of a corporation, or representative of a licensed motor vehicle dealer.

Iowa Code § 322.3(12) (emphasis added).

The DOT argues: "Iowa Code section 322.3(12) is clear and unambiguous on its face in barring individuals convicted of any crime connected to the selling of motor vehicles from holding a dealer license." Carreras disagrees, contending: "The meaning of that phrase is neither obvious, self-evident, nor clearly established." On the way to addressing the parties' dispute, we consider the various interpretations reached in these proceedings.

### 1. Agency Interpretation

We start with the ALJ's view of section 322.3(12). In an engaging and well-researched proposed decision, the ALJ determined "Carreras was not

convicted of structuring in connection with selling or other activity related to motor vehicles" because although his conviction was "related to" vehicle sales, selling cars was not "integral to" the structuring conviction. The ALJ recognized the structuring conviction "did not occur in a vacuum" and was "broadly speaking" connected to the car sales. But the ALJ reasoned that "the structuring conviction does not concern itself with the source of the unlawfully deposited currency."

In the next step of the administrative process, the reviewing officer reversed. That ruling on appeal criticized the ALJ for crafting "an elaborate argument, contending 'in connection with' should be narrowly interpreted." On the contrary, the reviewing officer believed the license revocation was properly based on a broad interpretation of the phrase, "in connection with," which was designed to "shield the general public" from dealers who engaged in "inherently fraudulent and deceptive" conduct, such as structuring currency deposits.

### 2. Interpretation on Judicial Review

The district court upheld the agency decision. The court rejected Carreras's position that his "illegal structuring activities came after the motor vehicle sales, thereby severing the connection of these activities to motor vehicle sales." While refusing to read "in connection with" as meaning "at the time of" or "simultaneous" to the auto sales, the court stressed that the legislature did not include that kind of "bright-line temporal rule" in section 322.3(12). The court reasoned that

superimposing such a time restriction onto the plain language would conflict with the liberal construction demanded by section 322.15(1).[2]

Instead, the district court adopted a "but for" test when interpreting "in connection with" under the revocation statute. The court noted the "entire basis" for Carreras's conviction was "structuring proceeds directly derived from motor vehicle sales at his dealership." Thus, "it follows that the entire basis for the resulting state motor vehicle dealer license revocation was in connection with his selling of motor vehicles at his dealership." The court held: "But for the dealership proceeds accumulated by Petitioner Carreras through selling motor vehicles, there could have been no crime." Boiled down, in the court's view, the conviction was "in connection with" car sales because the dealership was the way to produce the funds that fed the structuring offense.

### 3. Our Approach

As we interpret this statute, we abide by basic rules. We begin (and often end) with the words chosen by the legislature. *State v. Nicoletto*, 862 N.W.2d 621, 624 (Iowa 2015). If the meaning of the statute is clear from the text, we will not search beyond its express terms. *Neal*, 814 N.W.2d at 519. But if reasonable

---

[2] That provision states:

> All provisions of this chapter shall be liberally construed to the end that the practice or commission of fraud in the sale, barter, or disposition of motor vehicles at retail in this state may be prohibited and prevented, and irresponsible, unreliable, or dishonest persons may be prevented from engaging in the business of selling, bartering, or otherwise dealing in motor vehicles at retail in this state and reliable persons may be encouraged to engage in the business of selling, bartering, and otherwise dealing in motor vehicles at retail in this state.

Iowa Code § 322.15(1).

minds may differ on how to define particular words in the statute, it is ambiguous, and we may resort to interpretive tools to construe its overall meaning. *State v. Nall*, 894 N.W.2d 514, 518 (Iowa 2017). When the legislature has not defined those keywords, we can look to prior judicial decisions, as well as similar statutes, dictionary definitions, and common usage. *Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 860 (Iowa 2019).

That last situation exists here. Section 322.3(12) does not define "in connection with," and no Iowa appellate case has addressed this subsection. In a different context, our supreme court surveyed case law to find courts commonly define the phrase "in connection with" as "related to, linked to, or associated with." *Miller v. Cutty's Des Moines Camping Club*, 694 N.W.2d 518, 526 (Iowa 2005). The *Miller* court explained that "in connection with"—as related to commercial activity—"plainly has a broader reach than the phrases 'arising out of' and 'contained in.'" *Id.* Under that broader definition, the parties need only show "some relation or nexus" between the activities being compared. *Id.* Black's Law Dictionary further defines "nexus" as "a connection or link, often a causal one." *Nexus*, Black's Law Dictionary (11th ed. 2019).

Applying those definitions, we believe the DOT can show the necessary causal link between Carreras's structuring conviction and the used car sales or other activity related to the Los Primos dealership. That belief is not shaken by Carreras's argument that the structuring offense did not depend on the source of the funds. We agree how Carreras obtained the currency was irrelevant to his

conviction.[3] But we keep in mind that section 322.3(12) is to be liberally construed to protect consumers not just from "fraud in the sale, barter, or disposition" of cars but also from "irresponsible, unreliable, or dishonest persons" in the business of vehicle sales. Iowa Code § 322.15.

Granted, the record contains no allegation that Carreras engaged in illegal conduct in the sale of cars. But when pleading guilty in federal court to structuring currency deposits, Carreras admitted his purpose was to evade the reporting requirement.[4] In practice, he concealed the existence of a large amount of cash from the government through his business. As the DOT argued on appeal, beyond *selling* motor vehicles, the language of section 322.3(12) requires revocation if the indictable offense is "in connection with *other activity relating to motor vehicles*." Depositing money into the dealership's bank accounts qualified as other activity relating to motor vehicles.

On the one hand, it is not material to the structuring conviction that the source of the funds was car sales. On the other hand, it is material to the revocation provision that the structuring was a dishonest business practice that

---

[3] "[T]he purpose of § 5324(a)(3) is 'to prevent people from either causing the (usually innocent) bank to fail to file a required report or defeating the goal of the requirement that large cash deposits be reported to the Internal Revenue Service by breaking their cash hoard into enough separate deposits to avoid activating the requirement.'" *United States v. Gabel*, 85 F.3d 1217, 1223 (7th Cir. 1996) (quoting *United States v. Davenport*, 929 F.2d 1169, 1173 (7th Cir. 1991)).

[4] Carreras's plea agreement set out the elements of structuring as follows:
> (a) The defendant knowingly structured, assisted in structuring, or attempting to structure a currency transaction;
> (b) The defendant knew of the domestic financial institution's legal obligation to report transactions in excess of $10,000; and
> (c) The purpose of the structured transaction was to evade that reporting obligation.

sustained the dealership for years. The latter is true because the purpose of chapter 322 is to protect consumers from "fraud and deception." *State v. Miner*, 331 N.W.2d 683, 687 (Iowa 1983). Thus, we interpret section 322.3(12)'s description of an indictable offense "in connection with selling or other activity related to motor vehicles" as broad enough to include the structuring conviction.

Our statutory interpretation is bolstered by the doctrine of *ejusdem generis.* That interpretive aid instructs that "general words which follow specific words are tied to the meaning and purpose of the specific words." *Iowa Comprehensive Petrol. Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000). Recall that section 322.3(12) has four specific triggers: (1) conviction of a fraudulent practice; (2) convictions for selling a vehicle with an altered vehicle identification number; (3) convictions for misuse or falsification of vehicle registration; and (4) misuse of a vehicle dealer license. The fifth, catch-all provision mandates revocation upon a conviction of "any other indictable offense in connection with selling or other activity relating to motor vehicles." Given the range of prohibited conduct in the first four triggers—detailing fraud, alterations, falsifications, and misuse—we can construe the catch-all category to embrace the structuring offense based on its evasive nature. *See Sallee v. Stewart*, 827 N.W.2d 128, 153 (Iowa 2013) ("[W]hen a phrase like 'other summer sports' is added to a laundry list of terms all of which relate to outdoor activity, we interpret 'other summer sports' to be similar in character to the other activities, all of which relate to outdoor recreation.").

In the end, the DOT can show a sufficient nexus between Carreras's structuring conviction and selling or other activity relating to motor

vehicles. Keeping the deposits below $10,000 was a regular business practice, and he used dealership accounts to commit the offense. Contrary to Carreras's argument, no specific fraudulent sales are required because the fraud related to "other activity" in the catch-all category.

Alternatively, Carreras argues the DOT failed to offer substantial evidence that his conviction for structuring currency deposits was "inherently fraudulent and deceptive." Carreras contends the lack of substantial evidence is an independent ground for reversal. The DOT counters that this contention "is ultimately of no consequence as Iowa Code section 322.3(12) does not require a finding of fraud or deception." While we agree with the DOT, we still find substantial evidence to support the license revocation.

Our search for substantial evidence requires us to view the record as a whole. Iowa Code § 17A.19(1)(f)(1). In doing so, we judge all relevant evidence that both supports and detracts from the agency's findings, any credibility determinations, and the agency's explanation of why the relevant evidence supports its fact-finding. *Id.* § 17A.19(1)(f)(3). Substantial evidence supports an agency's decision even if the interpretation of the evidence may be open to a fair difference of opinion. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007).

As part of his plea agreement, Carreras admitted he knowingly structured the currency deposits despite being aware of his obligation to report transactions over $10,000, and he did so to evade the reporting obligation. The agency did not credit the couple's claim that they wanted to "avoid the paperwork" associated with the larger deposits. And that convenience argument was belied by their trips to several bank locations, sometimes on the same day, to make deposits. The couple

made around 400 such deposits over a two-year period. These facts provide substantial evidence to support the characterization of Carreras's conduct as "inherently fraudulent and deceptive." So the agency properly revoked Carreras's dealer license.

## B. Tolling of Revocation Period

Anticipating the possibility that we would affirm the judicial review order on license revocation, Carreras next argues we should reverse the order tolling the five-year revocation period. In response, the DOT argues "[i]t is illogical that a licensee convicted of a crime that triggers mandatory license revocation should be allowed to avoid any legal consequence by seeking and receiving stays of all proceedings during the appellate proceedings while the enforcement period, on the other hand, continues to run."

To resolve this dispute, we are again called to interpret section 322.3(12). This time we look at the phrase "from the date of conviction."[5] And this time Carreras contends the language is unambiguous. Meanwhile, the DOT argues a plain reading of the statute would lead to an "illogical outcome" and thus we should look to legislative intent.

Critical of that legislative-intent argument, Carreras contends the district court incorrectly interpreted the statutory language as directory and not

---

[5] That language also stems from Iowa Code section 322.3(12):

> A person who has been convicted . . . of any other indictable offense in connection with selling or other activity relating to motor vehicles, in this state or any other state, shall not for a period of five years *from the date of conviction* be an owner, salesperson, employee, officer of a corporation, or representative of a licensed motor vehicle dealer.

(Emphasis added.)

mandatory. The district court held that "for a period of five years from the date of conviction" is "directory language." In support, the court cited *Taylor v. Iowa Department of Transportation*, 260 N.W.2d 521 (Iowa 1977), in which the supreme court rejected a jurisdictional challenge by explaining that directory statutes fix a particular time for a thing to be done but do not prohibit it from being done later when the rights of interested persons are not injuriously affected by the delay.

> *Taylor* compared and contrasted mandatory and directory statutes:
>
> Mandatory and directory statutes each impose duties. The difference between them lies in the consequence for failure to perform the duty. Whether the statute is mandatory or directory depends upon legislative intent. When statutes do not resolve the issue expressly, statutory construction is necessary.

260 N.W.2d at 522.

Section 322.3(12) states that the revocation "shall" run from the date of conviction, suggesting the enforcement time frame is not permissive. *See* Iowa Code § 4.1. But the dichotomy between mandatory and directory does not refer to "whether a statutory duty is obligatory or permissive but instead relates to whether the failure to perform an admitted duty will have the effect of invalidating the governmental action which the requirement affects." *Taylor*, 260 N.W.2d at 523.

Still, Carreras insists we need not look for legislative intent beyond the terms of the statute. *See State v. Mathias*, 936 N.W.2d 222, 227 (Iowa 2019) ("We determine legislative intent from the words chosen by the legislature, not what it should or might have said."). He also asserts "there is no reason to assume that the Legislature did not intend Chapter 17A rights to affect the five-year revocation period."

We agree with both sentiments.[6]  "We assume the legislature was not operating in a vacuum" when it imposed a five-year revocation starting on the date of the conviction.  *See In re Det. of Fowler*, 784 N.W.2d 184, 190 (Iowa 2010).  As Carreras points out, the legislature enacted the original Iowa Administrative Procedure Act (now chapter 17A) more than two decades before the five-year revocation provision in section 322.3(12).  *See* 1974 Iowa Acts 165 (ch. 1090); 1998 Iowa Acts 127 (ch. 1075, sec. 26).  When drafting the latter provision, the legislature could have accounted for exhaustion of the licensee's administrative remedies.  But it did not do so.  As Carreras argues, the legislature knew stays of enforcement of agency action were available under section 17A.19(5) but did not include a tolling mechanism in section 322.3(12).  Ultimately, the courts are bound by the acts of the legislature.  Thus, we must decline the DOT's invitation to rewrite the statute in the guise of finding legislative intent.  *See State v. Christopher*, 757 N.W.2d 247, 250 (Iowa 2008) ("Under our rules of statutory construction, we are obligated to apply the law as written.").

We agree with Carreras that the district court lacked authority to toll the enforcement period.  Under the plain language of the statute, the five-year revocation should run from the date of conviction—September 6, 2018.

---

[6] We also question whether the triggering date for the five-year revocation period is a "duty" imposed by the statute as envisioned in cases discussing mandatory and directory duties.  "The mandatory/directory analysis concerns whether a governmental agency's failure to comply with a statutory duty will invalidate the governmental action to which the statute applies."  *In re Det. of Johnson*, 805 N.W.2d 750, 755 n.3 (Iowa 2011).  Here, the DOT did not fail to comply with a statutory deadline.  Instead, it wishes to redefine a statutorily-mandated enforcement period.

To recap, we affirm the license revocation but reverse the order tolling its enforcement. We remand with directions to the district court to order the revocation period to end in September 2023.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**